Dunn v. Elliott.

WILLIAM DUNN ET AL., APPELLEES, V. EVA ELLIOTT ET AL., APPELLANTS.

FILED JUNE 2, 1917. No. 19488.

1. **Wills:** CONSTRUCTION: AMBIGUITY: EXTRINSIC EVIDENCE. The bequeathing clause in the testator's will reads as follows: "I give and bequeath to my wife—Mary Etta Woodard all my personal property of whatever kind and nature, and our land, more particularly described as follows: (describing land) to be used by my said wife, Mary Etta Woodard during her natural life and under her complete control and at her death to be distributed between our heirs according to law." There were no children, the issue of the marriage of the testator and wife, to whom the words "our heirs" could refer. *Held*, that an ambiguity arises permitting parol or extrinsic evidence for the purpose of assisting the court in ascertaining its meaning.

2. ——: ——: DISTRIBUTION. Evidence examined, and *held* that, under the provisions of the will, the land should be divided one-half amongst the heirs of the testator and one-half amongst the heirs of his wife.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*McGilton, Gaines & Smith* and *A. L. Tidd*, for appellants.

*Fawcett & Mockett, T. S. Allen* and *H. L. Wilson*, contra.

CORNISH, J.

The questions presented in this case involve the construction of a will, and also the effect of the decree of the probate court in distributing the property of the estate.

The paragraph of the will in controversy reads as follows: "Second. I give and bequeath to my wife—Mary Etta Woodard all my personal property of whatever kind and nature, and our land, more particularly described as follows: (describing land) to be used by my said wife, Mary Etta Woodard during her natural life and under her complete control and at her death to be distributed between our heirs according to law."

Wills are to be construed according to the reasonable intent of the testator, as evidenced by the language of the will, giving to the words used their ordinary meaning. Where the language of the will is doubtful or ambiguous, parol or extrinsic evidence is admissible for the purpose of assisting the court in ascertaining the real meaning of the language used. Giving to the language above quoted its natural and ordinary import, the pronoun "our" would be taken to refer to the testator and his wife. The defendants contend that it means as if it read "my." The difficulty with this interpretation is that earlier in the paragraph the words "our land" are used, and in the preceding line the words "my personal property." It is unreasonable to suppose that in the same sentence one would use the words "my" and "our," except as distinguishing words.

It happens in this case that a latent ambiguity arises in this: There was no issue of the marriage of the testator and his wife to whom the words "our heirs" can refer. Both the testator and his wife, however, had children by former marriages; the husband two, the wife three.

It is contended by defendants that a distribution "according to law," as the will states, would be to give the land to the testator's children; that the courts will not, unless its language requires it, give a construction to a will which will have the effect of disinheriting or partly disinheriting the children of the blood of the testator, and they further argue, as above stated, that the pronoun "our" should be taken to mean "my." On the other hand, it is contended by plaintiffs that the plural pronoun "our"

means husband and wife; that the heirs referred to are two sets of heirs, those of the husband and those of the wife, as indicated by the use of the word "between," which usually refers to only two; that the signification of the words "according to law" is that the land shall be divided into two parts, one part going to his wife's, the other to the testator's heirs.

Neither of these constructions is without reason. A case is presented where it is proper to take evidence extrinsic to the will. Such evidence was taken. From this evidence it appears that the testator himself interpreted the will substantially in accordance with the view of the plaintiffs. At the time of its execution, when inquiry was made why one of his children, who was at the house, had not appeared, he remarked that "he guessed she didn't like it, but he couldn't help it; he wanted them all satisfied."

It appears that the land was the joint accumulation of husband and wife, and that they had lived together for 30 years.

From the language of the will, in the light of the evidence adduced, we are of opinion that the construction, contended for by the plaintiffs and given by the trial court, is right.

It appears that the probate court, in its decree distributing the property of the estate, decreed that the real estate in controversy upon the death of the testator's wife, Mary Etta Woodard, should descend to the children of the testator. While the county court has power to construe a will, in so far as it may be necessary to do so to give proper directions to the executor or administrator with will annexed, and for their protection, it is not empowered to finally decide controversies between adverse claimants under a will involving title to real estate. *Youngson v. Bond*, 69 Neb. 356; *St. James Orphan Asylum v. Shelby*, 75 Neb. 591. By the terms of the will the real estate was not to be distributed until the death of the testator's wife. At the time of the decree of distribution the wife had not

yet died. The decree of the county court was not *res adjudicata* as between the parties to this action. ·

For the reasons shown in this opinion, the·judgment of the trial court is

AFFIRMED.