BECK *et al.* v. BOOTH *et al.*\*

(Division B. Oct. 25, 1926. On Suggestion of Error, Nov. 22, 1926.)

[110 So. 204.  No. 25857.]

1. WILLS.  *Will setting aside land to testator's wife for life, at her death to return to testator's estate to be equally divided among his heirs then living. conveyed life estate with contingent remainder which vested at death of wife.*

A provision in a will reading, "I do hereby set aside one hundred and sixty acres of land (describing it) to my wife to have and hold as her individual property her natural lifetime, and at her death this property to return to my estate and be a part of same, to be equally divided among my heirs who may be living at that

time," conveyed a life estate with a contingent remainder which vested at the death of the wife, the wife being custodian of the title during her lifetime.

ON SUGGESTION OF ERROR.

2. WILLS. *Under will, directing division among "heirs" when youngest child became twenty-one, estate vested on testator's death.*

Under will directing equal division among heirs, estate to be held intact until youngest child became twenty-one, vested estate was created at death of testator, authorizing conveyance and partition on youngest child attaining age of twenty-one.

*Corpus Juris-Cyc. References: Wills, 40 Cyc, p. 1677, n. 74; p. 1680, n. 92. Time of vesting of estate of remaindermen of life estate, see 23 R. C. L. 536; Time of vesting of grant or devise of remainder to person or persons reaching specified age, see 23 R. C. L. 531.

APPEAL from chancery court of Sunflower county.
Hon. E. N. THOMAS, Chancellor.

Suit between Lizzie A. Beck and others and B. H. Booth and others for the construction of a will. From an adverse judgment, Lizzie A. Beck and others appeal. Reversed, and bill dismissed.

*Osborn & Witty,* for appellants.

The appellees contend that by paragraph 4 of the will, the widow got a life estate in the property described and Mr. Beck's six children acquired thereby a vested remainder interest as a class, and that the only contingency involved is that the class is subject to be opened to let in other heirs who may be born before the date of distribution. In other words, as we understand it, they contend that the time of enjoyment is postponed, but that the vesting of the estate is not postponed, but vested immediately at the time of testator's death in his then living heirs; to-wit, his six children.

The contention of the appellants is that the said children have no vested remainder estate, but that the remainder estate does not vest until the time of distribu-

tion; to-wit, the death of the widow. In other words, we contend that by clear and unambiguous language, both the time and the event are postponed until the death of the life tenant, and that on the death of the life tenant the testator's heirs who may be then living will acquire the property as a class. We contend that the remainder is contingent and not vested, and that it is now impossible to determine who the testator's heirs will be, and impossible to determine the quantity they will take.

It is settled in this state that a remainder to the testator's heirs, without the use of any words of survivorship, will be construed to mean the testator's heirs at the time of his death. See *Schlater et al.* v. *Lee et al.*, 78 So. 700, 117 Miss. 701.

Our court has many times recognized and applied the cardinal rules of construction, that the court will construe a remainder estate to be vested or contingent as intended by the testator and the language he uses in the will. *Branton* v. *Buckley,* 54 So. 850, 99 Miss. 116. This estate vests in the heirs living at the time of the death of the life tenant and not at the time of the death of the testator. 2 Alexander On Wills, p. 1314; 21 C. J., p. 995; *Wood* v. *Bullard,* 151 Mass. 324, 7 L. R. A. 304, 25 N. E. 67.

In the following cases the court held that the remainder did not vest until the death of the tenant. In *Cushman* v. *Goodwin,* 95 Me. 353, 50 Atl. 50, where the limitation was to testator's *heirs then living.* In *Travis* v. *Taylor,* 14 Week. Rep. 909, where the limitation was to such persons "as shall then be my next of kin." In *Sturge* v. *Great Western R. R. Co.,* 51 L. J. Ch. (N. S.) 185, 30 Week. Rep. 456, where the limitation was to such persons "who at the time of such respective decease of my children" should be testator's next of kin. In *Evans* v. *Godbold,* 6 Rich Eq. 26, where the testator directed that the property after the death of the life tenant be equally divided among his "surviving heirs." In *Wood*

v. *Bullard,* 151 Mass. 324, 7 L. R. A. 304, where the limitation was to testator's "heirs at law then surviving."

The word *"then"* has been frequently used in wills to describe a class of persons on which an estate shall devolve at a future time. *Carmack* v. *Copous,* 17 Beav. (Eng.) 397; *In re Wollaston,* 27 Beav. (Eng.) 642; *Farnam* v. *Farnam,* 53 Conn. 261, 2 Atl. 332, 5 Atl. 682; *Bigelow* v. *Clap,* 166 Mass. 88, 43 N. E. 1037; *Jacobs* v. *Whitney,* 205 Mass. 350, 91 N. E. 1009; *Hall* v. *Hall,* 209 Mass. 350, 95 N. E. 788; *Hall* v. *Wiggin,* 67 N. H. 89, 29 Atl. 671; *Mulliken* v. *Eearnshaw,* 209 Pa. St. 226, 58 Atl. 286; *In re Green,* 227 Pa. St. 188, 75 Atl. 1078; *Thran* v. *Herzog,* 12 Pa. Super. Ct. 559; *Proctor* v. *Clark,* 27 N. E. 673, 12 L. R. A. 721; *Tawney* v. *Word,* 1 Beav. 563, 565; *Hale* v. *Hopson,* 45 N. E. 913, 915; *Leonard* v. *Howorth,* 51 N. E. 7.

Where a testator gave a share of the income to his wife and gave the residue of his estate to his children, the executor to hold until the youngest became of age, at which time the executor should divide the estate remaining equally between "the children then living," the courts hold that the children took contingent remainders; that until the youngest became of age it could not be determined who were the then living children, and therefore, the testator could not have intended to give vested remainders. *Wilhelm* v. *Calder,* 102 Iowa 342; *Inge* v. *Jones,* 109 Ala. 175; *Ducker* v. *Burnham,* 146 Ill. 9, 37 A. S. R. 135; *Selman* v. *Robertson,* 46 S. C. 262; *Matter of Wilson,* 53 Misc. 238, 104 N. Y. S. 480; *Barr* v. *Gardner,* 259 Ill. 25, 102 N. E. 287.

The case most nearly in point is a very recent one, *Carr* v. *New England Anti-Vivisection Society* (Mass.), 125 N. E. 159, in which is quoted *Thompson* v. *Lundington,* 104 Mass. 193. The last cited case is conclusive and we refrain from further citation of authority except to call attention to three recent cases, one from the New Jersey court, 114 Atl. 329, another in 115 Atl. 909, and the other in 111 Atl. 922.

*Branton* v. *Buckley,* 54 So. 850, 99 Miss. 116, held that the members of the class are to be determined as of the time of the death of the life tenants. If this is correct, then necessarily the quantity of the estate is in any event contingent.

It has been decided in Mississippi that a remainder estate, though vested, is not subject to partition, even though title to one-half of the lands sought to be partitioned is vested in fee simple in the party seeking the partition. *Lawson* v. *Bonner,* 40 So. 488, 88 Miss. 235. If a remainder estate cannot be partitioned before the death of a life tenant, then it is difficult for us to understand how it would be possible for the remaindermen in the case at bar even if they be decreed to have vested remainders, to convey their remainder estate without taking into question the rights of after-born members of the class.

*Ward Allen,* for appellees.

The point on which we most rely for an affirmance of this case is this: Appellants are trying to use the word *"heirs"* as though it means *descendants,* but they are not synonymous. When the word *heirs* is properly defined, the riddle is solved and we have no more trouble with this paragraph of Mr. Beck's will, which at first reading seems somewhat ambiguous.

The word *heirs* is not always synonymous with the word *children* but in this case it does mean children. It is impossible for it to mean anything else and when we say impossible, we mean utterly and absolutely so. The definition is made by section 1381, Hemingway's Code.

The children are the heirs if they are all living at the time of the death of the parent. All of Mr. Beck's children were living when he died. They are, therefore, his heirs. We cannot escape that conclusion. The only chance for Mr. Beck to have ever had other heirs than his children was for one or more of his children to

have died leaving descendants before Mr. Beck died. The grandchildren who are parties defendant to this suit are not, never have been, and never can be the heirs of John J. Beck. They are the heirs of their own parents. They are the descendants of Mr. Beck, but not his heirs.

If we apply the above-mentioned statute in connection with section 2274, Hemingway's Code, it will easily be seen that this remainder is as vested and fixed as if sealed in a leaden casket and buried in the bottom of the sea. We think that the statute against survivorship should be applied and wish to say that were it not for the statute the cases cited by opposing attorneys might be in point within a limited field. Were it not for the statute, the title to the remainder would not absolutely vest until Mrs. Beck's death, but it could never wander out of the six children. Within this limited field, we admit appellants' cases might be in point.

The only possible doubt in our minds as to the application of the statute against survivorship is the question of whether or not the statute applies to remainders, but in *Hawkins* v. *Hawkins*, 72 Miss. 749, 18 So. 479, it was applied to life estates and we see no reason why it should not apply to remainders. We also find that in *Nash* v. *Cotter*, 16 Pick. 491, a similar statute in Massachusetts was applied to a remainder.

Even if there were no statute against survivorship in this state, opposing attorneys in their brief quote law which eliminates all of the grandchildren from participation in the remainder. 23 R. C. L., p. 543.

The end of the whole matter is this: If the statute against survivorship applies, then we have a vested remainder in the six children. If the statute against survivorship does not apply, then we have a contingent remainder to a class, but that class is composed of the six children, and the only uncertainty is as to which of the children may be living at the time of Mrs. Beck's death. Under this condition Mrs. Beck and the six children can

alienate the life estate and give a fee-simple title to the purchaser, since they are all the persons who can have any possible interest in the life estate.

*Osborn & Witty,* in reply, for appellants.

Counsel relies upon section 1381 and 2774, Hemingway's Code. This is entirely new to us. We assumed that counsel would contend in this court, as he did in the court below, that the language of the will created a vested remainder and that the clause "who may be living at that time" related to the children of the testator who were living at the time of his death, and would rely upon one or two old Massachusetts cases in support of that contention. However, counsel has deserted his former position, and now attacks us from a new angle. It will be noted that he has not cited or relied upon any case, either from the Mississippi supreme court or from any other court, to support his new position. We will give him credit for being courageous, when he so boldly attacks the decision of Chief Justice SMITH in *Branton* v.. *Buckley,* 99 Miss. 116, 54 So. 850, and especially in his laborious effort to explain away and differentiate *Carr* v. *New England Anti-Vivisection Society* (Mass.), 125 N. E. 159.

Section 1381 has no earthly application because it provides on its face that it relates to descent of land, *not devised.* We conceded in our original brief that if the words "who may be living at that time" had been omitted from the will, the heirs who took the remainder would be the heirs living at the time of the testator's death. The trouble with counsel's argument is this: He loses sight of the fact that the testator does not designate the remaindermen as those who might be living at the time of his death, but in plain and unambiguous language describes and designates them as those who may be living at the time of the death of the life tenant.

Now as to the other section of the Code relied upon, so far as we know, or have been able to ascertain, there is not a state in the Union that has not adopted a statute similar to ours, in effect abolishing joint tenancies; but what possible connection the statute abolishing joint tenancies in favor of tenancies in common has to do with this case, we are unable to understand.

ETHRIDGE, J., delivered the opinion of the court.

This suit was filed for the purpose of construing a will executed by John J. Beck reading as follows:

"This is my will. I may not write it as the law requires, but I want it to be just as I write it in case I die. I want my wife, Lizzie A. Beck to be executor of my estate without bond. I also want Fred Grittman to be trustee to help her and advise her; in all business transactions, and it is my request of her that she take their advice. It is also my will that my estate in full be held intact. Just as it is until George Earnest my baby boy is twenty-one years old. And the proceeds of all rents and incomes be used to support my wife and children as long as they are single and at home and educate the children. In view of the fact that all of my life insurance is made payable to my wife, Lizzie A. Beck, I request of her that she collect it and pay all my honest debts, when they are presented in proper form. It is also my will that in case of my wife's death before George Earnest is twenty-one years old that Fred Grittman be executor in her place to carry out this will. I do hereby set aside the one hundred sixty acres of land known as the old Watson place, southwest one-half of section 13, Township 23, Range 4, west. Also one-half acre west side in A lot, three in B, and residence to my wife to have and hold as her individual property her natural lifetime, and at her death, this property to return to my estate, and be a part of same, to be equally divided among my heirs who may

be living at that time. This will is intended to cover all property, both person and real. In witness whereof, I now sign my name.

                               "John H. Beck."

At the time this will was executed, Beck thought he was going to die, but he recovered and lived for some time thereafter. At the time this will was executed, his property was perfectly free from incumbrances, but, subsequently, was incumbered by a deed of trust. This deed of trust was given for the purchase money, and the holder thereof was unwilling to renew it, and efforts to refinance were unsuccessful because of doubt in regard to the title of the one hundred sixty acres of land and the residence lot devised to the widow for her lifetime. Since the death of Beck, the children mentioned had become of age, and some of them had executed a deed to all interest in said lands. All the other children of decedent have married and have children who are parties to the suit.

The case was tried upon the following agreement:

"It is agreed by and between solicitors for the complainants and defendants that said cause shall be tried on the original bill, the answer thereto and the following statement of facts, the right being reserved by both sides to object to any and all of said facts for competence, relevancy, etc.

"(1) John J. Beck was a man of less than the average school education. His will was written without legal advice of any kind, and was written on what he thought was his deathbed, his doctors having advised him that he had only a few days to live.

"(2) At the time he wrote the will, only two grandchildren had been born to him; namely, the first two defendants named in paragraph 1-e of the bill of complaint. The father of these two defendants was in comfortable financial circumstances at the time.

"(3) The respective ages of the children of John J. Beck and his wife, Lizzie A. Beck, at the time of the fil-

ing of this suit, are as follows: Alma Beck Dubard, thirty-six years; Johnnie Beck Durley, thirty-two years; C. A. Beck, thirty years; Myra Kate Beck Daniel, twenty-six years; George Earnest Beck, twenty-four years. Mrs. Lizzie A. Beck's age is fifty-six years. The only unmarried child is George Earnest Beck.

"(4) The testator owed some money at the time he wrote the will, but was in comparatively easy circumstances. At the time of his death he owed large sums of money, and all of the farming lands described in the original bill are mortgaged. One loan for over twenty thousand dollars is secured by mortgage on six hundred forty acres of the land, including the one hundred sixty acres comprising a part of the life estate. This loan will mature in 1927, and the holder of the loan has refused to renew it in the present state of title to the land. Many efforts have been made to finance the property in anticipation of the maturity of this loan, but all to no avail. Mrs. Beck and the children wish to partite the property and each one do individual financing, but have been unable to give deeds to each other conveying an unquestionable title.

"(5) It is further agreed that after the complainant, George Earnest Beck, became of age, he executed and delivered quitclaim deeds to all of the complainants named in paragraph 1-a of the original bill of complaint, to each of said complainants a quitclaim deed to the lands respectively bought by them, as shown by said bill of complaint.

"(6) It is further agreed that the copy of the will of said John J. Beck, which is made an exhibit to the original bill of complaint, is a true and exact copy of said will, special reference being had hereby to grammar, punctuation, and paragraphing."

The Chancellor held that the estate devised to the widow descended to the remaindermen, subject to the life estate, and became vested at the death of the testator, John J. Beck, and also held that the conveyance

by the children was valid and conveyed their interest in the estate.

The provision for construction is the language used in the will, viz.:

"I do hereby set aside one hundred sixty acres of land known as the old Watson place, southwest one-fourth of section 13, Township 13, Range 4, also one-half acres west side of square A. Lot three in square B, and residence, to my wife, to have and hold, as her individual property her natural life, at her death this property to return to my estate, and be a part of same, to be equally divided among my heirs, who may be living at that time. This will is intended to cover all property, both personal and real."

Appellant contends that the remainder did not vest at the death of Beck, but would only become vested at the death of the widow and the termination of the life estate, and that the word "heirs," used in this provision, is used in its technical sense; while appellee contends that the word "heirs" is used in the sense of children, and that all possible children were in existence, and that it was a vested remainder subject to be opened up to let in after-born remaindermen.

In our opinion, the language of the will makes it plain that the estate is to vest in his heirs at the death of the widow, at the termination of the life estate, and that the word "heirs" must be given its ordinary, legal meaning.

It will be noted from a reading of this provision that, at the death of the widow, this property "is to return to my estate and be a part of same, to be equally divided among my heirs who may be living at that time." The remainder goes to the heirs who may be living at the termination of the life estate. The life estate is in the widow for the period of her natural life, and she is custodian of the legal title for the benefit of the heirs, to be determined at the date of her death.

It may be that the children of Beck may die pending the life estate. In such case, their children, of course,

would be heirs of the testator, taking the place of their parents. Under the will, they would be entitled to the remainder, and therefore the judgment of the Chancellor was erroneous.

It may be a hardship, as it frequently is a hardship, when by a will property is tied up and the estate is unable to finance obligations of debt against the property, but that cannot affect the results here. So long as the law gives the right to make a will, as our law does, and one is made in accordance with the law, the court must give effect to the intention of the testator where it may lawfully be done, and to determine his intent it will be guided by the words used in the will where it is unambiguous.

The judgment of the court below therefore will be reversed, and the bill dismissed.

*Reversed and bill dismissed.*

## On Suggestion of Error.

We erred in the former opinion, in reversing the entire decree of the chancery court dismissing the bill. The opinion therein rendered should have been and is now limited to the construction of the following provision of the will:

"I do hereby set aside the one hundred and sixty acres of land known as the old Watson place southwest one-fourth of section 13, Township 23, Range 4 west, also one-half acre west side in A lot three in B and residence to my wife to have and hold as her individual property her natural lifetime, at her death, this property to return to my estate, and be a part of the same to be equally divided among my heirs, who may be living at that time."

The rest of the estate disposed of by the will became vested at the death of the testator, to be held intact until the youngest boy became twenty-one years old, and that not conveyed to the wife, on the attainment of twenty-one years by the youngest son, George Earnest Beck, was subject to conveyance and partition, and the decree

of the chancery court with reference to this part of the will will be affirmed.

As to the part giving the widow a lifetime interest, the former opinion stands, as the remainder interest in said property so conveyed does not vest in the heirs until the death of the widow.

*Suggestion of error is sustained in part.*