## Cambron et al. v. Pottinger et al. (Two Cases).

March 12, 1946.

Jos. W. Cambron for appellants.

Harris & Drury and King & Flournoy for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Two suits were filed seeking interpretation of the will of W. T. Wathen, deceased, and requesting a sale of his property for the purpose of a final distribution of the proceeds of his estate. One of these suits also sought interpretation of two deeds and a contract executed by the decedent, while the other suit sought cancellation of the same instruments.

The Chancellor consolidated the two suits, adjudged all necessary parties were before the court, ordered a sale of the decedent's property, interpreted the meaning of the decedent's will, deeds and contract to be that the decedent's own heirs should take one-half of his property and that his deceased wife's heirs should take the other half of his property, all heirs to take per stirpes after payment of debts, expenses and specific bequests.

From the Chancellor's judgment, part of the heirs of W. T. Wathen, that is the particular group represented by Joseph W. Cambron as appellant, now prosecute this appeal. Another part of W. T. Wathen's heirs, a group that entered the litigation by intervening petition, now concede that the Chancellor's judgment should be affirmed.

The appellants, the group of heirs taking issue, contend that the Chancellor's judgment was erroneous in (1) upholding the validity of the will and in (2) ordering a sale of the testator's property before final determination of the rights of all the parties in the Court of Appeals. More specifically, the appellants contend that the testator's will is void because (a) it is too vague and uncertain and (b) it is without meaning unless accompanied by parole evidence and (c) it is violative of the statute against perpetuities.

W. T. Wathen, when he was 81 years old and married to his third wife, entered into an arrangement with her by the terms of which they were to deed certain real estate to a Trustee in order that the Trustee might reconvey the same real estate back to W. T. Wathen

and his wife, same to be thereafter held jointly and equally by them during life, with survivorship enjoyment to either of them during his or her surviving life and to include the right to fully use the property conveyed, even to the extent of consuming the whole of such property if it should become necessary for support, the surviving spouse to be the sole judge as to such necessity, such reconveyance from the Trustee to W. T. Wathen and his wife to further provide that one-half of the property, unexpended and remaining after the termination of the survivorship estate, should descend to the legal heirs of W. T. Wathen and the other one-half to descend to the heirs of his wife, each group of heirs to take in fee simple. Following out this arrangement, a deed from W. T. Wathen and his wife to their Trustee was made on the date of March 3, 1931, and likewise the reconveying deed was, on the same date, made from the Trustee to W. T. Wathen and his wife, and this latter instrument of reconveyance contained complete provisions in accord with the tenor of the prearranged plan mentioned above. Also, on the same date of March 3, 1931, W. T. Wathen and his wife made a written contract between themselves providing for present and future disposition of all their personal property, whether already acquired or to be acquired in the future, in the same manner as the real estate, which had already been disposed of by the trust conveyance and reconveyance mentioned above.

During the period of time subsequent to the conveyance, reconveyance and written contract, W. T. Wathen acquired in his own name certain other, additional property that was not included in the conveyance and reconveyance of March 3, 1931.

W. T. Wathen died on March 15, 1935, at the age of 85 years, and his widow died on November 8, 1944, at the age of 79 years. Neither W. T. Wathen nor any of his wives ever had any children by birth or adoption.

The will itself, which is dated February 16, 1934, and which was filed and probated as the last will of W. T. Wathen on April 1, 1935, in Union County Court, and which is now a subject of controversy in this litigation, follows:

"Feb. 16, 1934

"At my death I want all my debts paid first. I then

assign to my wife Mame Pottenger Wathen, all my real and personal property. At her death I will to St. Annes Church $1,000.00 the remainder of the estate to be divided equally between my heirs and the heirs of my wife.

"W. T. Wathen, Sr.

"Signed Witness:
"(Mrs. T. A. Cullen)
"(Mrs. C. R. Smith)"

Appellants' first contention is that the Chancellor committed error in adjudging their decedent's will valid rather than totally invalid. It is to be observed that the present litigation is collateral to the original probate proceeding for the above will. Accordingly, the probate judgment rendered by Union County Court in 1935 is conclusive as to all facts necessary to make the will in question valid for purposes of testamentary disposition. And the general contention of invalidity relating to this particular will now appears to be improper and untimely. See Harl v. Vairin's Executor, 175 Ky. 468, 194 S. W. 546. This is particularly true because there is no semblance of the characteristics of a void instrument on the face of the above will. Conceivably, a purported will, with vacuity and utter vagueness scarring its countenance like pock marks, might be adjudged an invalid instrument, even though it had been previously probated by a proper court order. That would be possible in some instance where the purported will was void on its face. For example, a will, duly probated, might show on its face a gift of all the testator's property "to one certain black-haired, brown-eyed woman of Louisville." Such an instrument, though probated with all the solemnity and legality of the world's most outstanding probate court, would necessarily be considered void and meaningless because of its unfathomable bequest to an unnamed beneficiary in a city having thousands of persons fitting the given description. But the will in this case was not vague nor uncertain nor void on its face in any particular. The beneficiaries it endowed were the legal heirs of its testator and the testator's wife. They were all ascertainable, all in being, all discoverable, even though some might be on Guam Island and the expense of accurately finding the whereabouts of every one of them may be a considerable amount before a full and final settlement of the estate can be made.

Appellants also contend that the will in question is meaningless without the support of parole evidence to explain its terms, and they say the Chancellor committed error in not requiring introduction of such evidence before construing the will. But we have held that there is no requirement for the introduction of parole evidence to amplify the meaning of an unambiguous will, which should be construed according to its terms alone. Marshall v. Kent, 210 Ky. 654, 276 S. W. 563. This will is not ambiguous. Its terms appear to be susceptible of only one meaning and therefore parole evidence was entirely unnecessary. Presumably, appellants considered this will needful of the support of parole evidence because it used the word "heirs" without any specification of more particularity. With this we cannot agree. The common law technical meaning of the word "heirs" is to designate the persons who are entitled by law to succeed by inheritance to the real estate of a decedent, namely those persons who are related by blood and who would take his real estate if he died intestate. The word "heirs" in a will may be held to refer not only to those who should participate in the real estate but also those entitled to the personalty where the intention is to dispose of the whole property. 28 R. C. L. 247-249. The ultimate effect of Wathen's will was to distribute one-half of his property remaining at his wife's death in the same manner as if Wathen had died intestate and also to distribute the remaining half of his property to his wife's relatives by blood who would have legally inherited her property in case of her intestacy. This is a will, as we see it, capable of standing in the sufficiency of its own terms without the necessity of parole evidence for its proper interpretation.

From what we have already said, there seems to be little necessity for discussing appellants' contention that this will violates the statute against perpetuities. As all lawyers know, our prohibition against perpetuities is found in KRS 381.220 and is in the following language:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

As we have already pointed out above, the beneficiaries of this will were all in being at the very time the will took effect, and if this is so, it follows that no power of alienation of any property passing under the will was suspended for a longer period than the continuance of lives in being. Therefore, the suspension of alienation under this will lacked just twenty-one years and ten months of running afoul of the prohibition of the statute. There appears to be no sound basis for appellants' contention that Wathen's will violates the perpetuities statute.

Another contention of appellants is that the Chancellor erred in refusing to defer the selling of decedent's property until all rights of the parties were finally determined in this court. While appellants requested, in their pleadings, a sale of the decedent's property, yet they subsequently sought to have the sale deferred pending this appeal. But again we cannot agree with appellants' viewpoint. The record indicates the sale was regular and legal, and there is no showing whatever that the property brought less than the full amount of its fair, market value. In point of fact, appellants filed with their brief a photostatic copy of a Union County paper of October 25, 1945, in which a news article reporting this sale said, ''The price was the highest paid for farm land here in several years * * .*.'' There is also a possibility that a deferred sale might produce less in changing and uncertain times. Consequently, we believe the Chancellor correctly ordered a sale of the Wathen property at the time he rendered the judgment.

There appears to be no basis for any sound argument to the effect that either of the deeds or the contract in question should have been cancelled, although this was sought by prayer of one of appellants' pleadings, the projected grounds being that they lacked consideration and because they were abandoned after they had been made and executed. But these instruments have the appearance of legality and validity and we fail to see the necessity for their cancellation on the unsubstantiated grounds named or on any other grounds.

We have attempted to carefully consider all the provisions of the Chancellor's judgment, as well as each and every one of appellants' contentions on this appeal, and from such consideration we have been able to reach

a definite conclusion that the judgment was sound and correct in its construction and interpretation of the deeds, the contract and the will, all subjects of this litigation, and we have also reached the further conclusion that the judgment was otherwise free from any prejudicial error affecting the substantial rights of the parties involved.

Wherefore, seeing no reversible error in any of the grounds set up by these appellants, the judgment of the Chancellor is now affirmed.