### Hardin et al. v. Crow et al.

June 10, 1949.

Rehearing denied September 30, 1949.

David D. Cline and Samuel Milner for appellants.

A. H. Barker and William Conley for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

John R. Carter, a resident of Nicholas County, Kentucky, died testate in 1921. His will was executed on September 5, 1904. As copied in the record it was not witnessed, being signed by himself alone. The first clause provided for the payment of his debts and the second one gave his wife $625 "absolutely" which appears to have been the amount that she inherited from her father. We find no appraisement of John R. Carter's estate, but he did own a tract of land located in Nicholas County, of 125 acres.

The third clause of his will is:

"I will and bequeath to my wife, Maria F. Carter, all the balance of my property, of every kind, real personal and mixed, during her natural life. And after her death the same shall be equally divided between her nearest relatives and my nearest relatives.

"I hereby appoint my wife as my executrix and direct that no bond be required of her, and I further direct that no inventory or appraisement be required of or made by her of my estate."

No children were born to the couple and when the wife died, on February 13, 1946, she had between 25 and 30 living collateral blood relatives, or heirs, and at the same time there were living only five such collateral relatives of her deceased husband.

This action was brought by the heirs of the wife against those of the husband to obtain a construction of clause (3) of the latter's will, and to obtain judgment for sale of the land for purposes of division among those entitled to it under Mr. Carter's will, since it could not be divided in kind. The court directed a sale of the land by the Master Commissioner and that the net proceeds thereof be divided into two equal parts, one to be distributed per stirpes among the surviving relatives of Mr. Carter and the other in like manner among the surviving

relatives of Mrs. Carter. From that judgment the widow's relatives prosecute this appeal.

In the petition of appellants they submit for the court's interpretation a number of questions to be determined by the court, two of which are, whether John R. Carter by his will intended to and did give one-half of the remainder interest after his wife's death to his relatives, or heirs, and the other one-half to like kindred of his wife, and the other is, if that question should be answered in the affirmative should the division of each half be made per capita to the members contained in the group, or per stirpes. As we have said the trial court adjudged that the testator did divide in his will the remainder interest in his property into two parts, the beneficiaries of each part to be the members of a group consisting of his heirs or relatives, and the other those of his wife, and that the members of each group took per stirpes and not per capita.

On this appeal appellants' counsel recite the questions for determination, but follow that recitation with this statement:

"The only disagreement between the appellants and the appellees herein is the construction put upon the will by the court to the effect that the property of John R. Carter should be divided into two equal parts and distributed one-half thereof to the nearest relatives of John R. Carter and one-half thereof to the nearest relatives of Maria F. Carter."

It will therefore appear that all of the other questions mentioned in the petition are abandoned, thus relieving us of determining any of the arguments concerning their correctness, except insofar as may be necessary to determine the sole question upon which counsel disagrees with the court's judgment, i. e., whether "the property of John R. Carter should be divided into two equal parts and distributed one-half thereof to the nearest relatives of John R. Carter and one-half thereof to the nearest relatives of Maria F. Carter." In endeavoring to support the contention that he did not do so counsel contends that he intended to create but one group of beneficiaries in remainder, the members of which should consist of his relatives, or heirs, and also

those of his wife, which would be the number of her relatives or heirs living at the time of her death and those of her husband living at that time, which in this case would constitute a group of some 45 members, each of which counsel contends should share on a per capita basis.

In support of the contended per capita division among the members of the group composed of the heirs and relatives of both the wife and the husband living at the time of her death counsel cite a number of cases from this court wherein such a division was ordered where the testator's language was "equally divided share and share alike," and where it clearly appeared that all of the beneficiaries were members of a single group. We have no such case here. On the contrary the language is "and after her death the same shall be equally divided between her nearest relatives and my nearest relatives," thus clearly creating two groups of beneficiaries.

In the late case of Horseman v. Horseman, 309 Ky. 289, 217 S. W. 2d 645, 648, we had under consideration similar questions with those presented in this case concerning devises to groups and classes of beneficiaries. In that case we cited the text in 57 Amer. Jur. 831, section 1259, which says:

"The only universal rule for determining whether testamentary gifts to several persons are gifts to them as a class rather than as individuals is to ascertain the intention of the testator, which, it is everywhere conceded, is controlling. The decisive inquiry is, whether or not the testator, in making the particular gift in question, did so with 'groupmindedness,' whether, in other words, he was looking to the body of persons in question as a whole or unit rather than to the individual members of the group as individuals; if the former, they take as a class. Any additional circumstances which may be seized upon, such as the general scheme of the will, the manner and form in which the beneficiaries are designated, the particular language used or the relationship of the parties and the circumstances surrounding the testator, are to be regarded merely as aids in ascertaining the testatorial intention."

Other authorities are listed in the Horseman opinion

endorsing that text, which after all is an affirmation of the prevailing rule for the interpretation of written instruments, including wills, which is to ascertain the intention and purpose of the makers thereof from the language employed from a consideration of the entire instrument by means of which the true purpose of the maker is revealed. We have seen that the will is necessarily a holographic one, presumably phrased by the testator himself. Being a layman he was not familiar with the meaning of technical words in expressing his intention and purpose. He therefore employed the word "relatives" instead of "heirs" which we are convinced he clearly intended as the members of each group that he made to share his property after his wife's death. The will indicates that he was a just man. His wife, no doubt, had helped him to acquire a large portion, if not all, of his property. Therefore, he desired that half of his estate in remainder, after his wife's death, should go to her kindred under the statute of inheritance and distribution, and that his heirs should share likewise in the half of the property devised to them in their remainder interest. As we have seen, the court so determined, and we think correctly so.

Wherefore, the judgment is affirmed.