DAILEY *v.* HOUSTON, et al.

No. 42587        April 22, 1963        151 So. 2d 919

*Caldwell & Caldwell,* Charleston; *Ben M. Caldwell,* Marks, for appellant.

*Breland & Whitten,* Sumner; *Albert Donald Whitten,* Charleston, for appellees.

ETHRIDGE, J.

This case involves principally that ancient nemesis of testamentary construction: a gift, after a life estate, of remainder to the heirs of testator and another person. Specifically, we are concerned with the nature of remainders created by a will giving a life estate to testator's spouse, with remainder to be divided equally between testator's heirs and his wife's heirs. Under the particular circumstances, we hold that both remainders are contingent, with the remaindermen to be determined and their interests to be vested at the death of the life tenant. The chancery court correctly held to that effect.

In 1916 Grant Thompson, the testator, married a widow named Bertha Dailey, who had a small son, Willie Dailey, by her prior marriage. Soon after this, Thompson purchased a farm near Charleston, in Tallahatchie County, on which he, his wife and stepson began living. As the years went by Thompson bought other land in the vicinity, until at the time of his death he owned more

than 300 acres. During part of this period, some of Thompson's relatives lived on his farm as tenants, but, by the time of his death in 1955, none of his immediate relatives were there. Dailey, the stepson, had married and owned a farm next to Thompson.

Thompson's land consisted of two tracts. Parcel 1 contained 184 acres. Parcel 2 consisted of 132 acres, including improvements and the family home. In 1928 he conveyed to his wife, Bertha, a one-half interest in Parcel 2. In 1949 Thompson had a lawyer prepare the will involved in this suit. He executed it, and died in 1955 at the age of 85 years. He and his wife had no children. She was his only heir at law.

In Item I testator bequeathed to his wife, Bertha, all personal property, including crops, stock and money. Item II provided:

"I give, devise and bequeath to my beloved wife, Bertha, the use of all the real property owned by me at the time of my death as long as she shall live and upon her death one half to be divided among her heirs and one half to be divided among my heirs but subject to the following charge mentioned in Item III."

Item III stated that, before his real estate should be divided, $1,000 should be given to the Charleston Colored High School for educational purposes, and, unless his wife gave this amount, either by will or otherwise, then it should be a lien on the real estate. Testator appointed his wife as executrix without bond, inventory or accounting.

At the time of Thompson's death, Bertha was 71 years of age. She died testate four years later (1959), at the age of 75 years. During that interim period, Bertha married John Houston. At the time of her death, Bertha's heirs at law were her son, Dailey, and her husband, Houston. On Thompson's death, his sole heir was his wife, Bertha. At the time of Bertha's death in 1959, Thompson's heirs at law, under the statute of

descent and distribution, were a sister, who died in 1956, and the surviving children of two other sisters, who predeceased the testator. Shortly after Thompson died, Bertha conveyed the one-half interest she owned in Parcel 2 to her son. There were other conveyances by interested parties.

In 1960 Bertha's third husband, John Houston, and others, brought this action in the Chancery Court, First Judicial District of Tallahatchie County, against Dailey. The amended bill of complaint alleged that the heirs of Bertha under Thompson's will, determined at the time of her death, were her son and her surviving husband; that the heirs of Thompson should also be determined under his will at the date of the death of the life tenant, and, if this were done, they would consist of the children and grandchildren of the deceased sisters. Houston had purchased the interests of certain Thompson heirs. Some of the Thompson heirs had conveyed to Dailey all of their interests in testator's estate. The bill asked for a partition by sale. Dailey's answer asserted the heirs of both testator and the life tenant should be determined on the date of testator's death, and the partition should be in kind.

The chancery court held it was Thompson's intent that his heirs, as well as those of the life tenant, should be determined as of the date of Bertha's death. He accordingly apportioned the one-half interest devised to the heirs of Bertha to her son, Dailey, and her third husband, Houston. The one-half devised to testator's heirs, determined at the life tenant's death, was divided among them accordingly. The trial court ordered the land to be partitioned by sale. From that decree this interlocutory appeal was taken.

I.

(Hn 1) Limitations in favor of "heirs" give rise to problems substantially different from those pertaining

674

to "children" or "issue," because the primary meaning of "heirs" depends on statutes concerning the intestate succession of property. There are numerous and often irreconcilable precedents. The primary meaning of the word "heirs" connotes those persons who, under the applicable law, would succeed to property if the designated ancestor died owning the property and intestate at the time when the group of takers is to be ascertained. 3 Powell, Real Property (1952), sec. 372. Accordingly, where the class of beneficiaries is described as "heirs" or "next of kin" of the testator, the class is determined as of the death of the testator, unless the will reflects a contrary intention. 4 Page on Wills (Bowe-Parker Rev., 1961), sec. 35.9; 33 Am. Jur., Life Estates, Remainders, etc., sec. 137.

Two principal reasons usually are given for determining the members of the class on the death of the testator - - the preference of the law for vested remainders, and the idea that, after making special provisions for disposition of his property, the testator does not care to follow the property further, but is content to let the law take its course as intestate property. For reasons stated later, these two premises for the general rule are not dominant in the instant case. However, several Mississippi decisions have applied it, determining "heirs" on testator's death, in the absence of contrary circumstances and evidence of a different intent. McDaniel v. Allen, 64 Miss. 417, 1 So. 356 (1886); Alexander v. Richardson, 106 Miss. 517, 64 So. 217 (1913); Schlater v. Lee, 117 Miss. 701; 78 So. 700 (1918); White v. Inman, 212 Miss. 237, 254, 54 So. 2d 375, 30 A.L.R. 2d 380 (1951); Dunlap v. Fant, 74 Miss. 197, 20 So. 874 (1896); Branton v. Buckley, 99 Miss. 116, 54 So. 850 (1911); Harvey v. Johnson, 111 Miss. 566, 71 So. 824 (1916).

Cases which depart from this general rule may be classified broadly "into (1) those which select a *different*

*group* of persons from the traditional group, and (2) those which select the persons as of a *different time."* Simes, Knouff, Leonard, The Meaning of "Heirs" in Wills - - A Suggestion in Legal Method, 31 Mich. L. Rev. 356, 359 (1932). The same case may involve a departure in both respects, as here.

With reference to the time at which the class of heirs is determined, there are three different interpretations: (1) "heirs" as determined at the death of the testator, (2) "heirs" as determined at the death of the life tenant, and (3) "heirs" as determined at the time specified for the future interest to take effect in possession or to vest in interest, other than at the times mentioned above. Under the general rule, absent a contrary intent, a class gift to testator's heirs would ordinarily be determined on the date of testator's death.

Conversely, a class gift to the "heirs" of one other than the testator, here his wife, ordinarily depends, absent a contrary intention, upon the time of the death of such other person, who dies after the testator. The gift is to take effect at the termination of the particular, life estate which is vested in the person to whose heirs the gift is made. The time is usually the death of the particular tenant. It terminates his estate, and the interests of his then heirs take effect. 4 Page on Wills, sec. 35.10. In short, ordinarily a class gift to testator's wife for her life, with remainder to her heirs, would determine the heirs at the death of the life tenant.

In the instant case, both types of class gifts following a life estate are present. Thompson devised to his wife, Bertha, a life estate, and "upon her death, one-half to be divided among her heirs and one-half to be divided among my heirs . . ." Under the presumptive rule, Bertha's heirs would be determined at her death, and the testator's heirs at his death. Both class gifts have a double aspect: If the remaindermen are determined at testator's death, they have vested remainders. If

they are fixed at the death of the life tenant, they have contingent remainders. The nature of the remainder estates, vested or contingent, and the time of determination of the remaindermen who take, are interrelated and dependent one upon the other.

**(Hn 2)** Hence the precise questions here involve both the nature of the remainders created by Thompson's will, and determination of the time of ascertaining the remaindermen. Considering all relevant factors, we think the will created contingent remainders in two classes, the heirs of the life tenant, and of the testator; and the remaindermen in both classes are to be determined as of the time of the death of the life tenant.

The annotation in 19 A.L.R. 2d 371 (1951) collects most of the cases dealing with the nature of remainders created by wills giving a life estate to the spouse of testator, with remainder to be divided equally between testator's heirs and spouse's heirs. The alternatives are "presumptive rules of construction rather than arbitrary devices. The intent of the testator controls." White v. Inman, 212 Miss. at 255, 54 So. 2d at 375, 381. The "rules" are simply approaches to the problem - - intellectual devices for judicial assistance in ascertaining either testator's actual intent, or what he would have intended if he had thought about it, provided the words used permit that construction.

With these criteria, under somewhat similar devises, a number of courts have held that the testator's heirs were to be determined as of the date of his death, and the spouse's heirs were to be ascertained on the spouse's death. Mosier v. Bowser, 226 Ill. 46, 80 N.E. 730 (1907); Knutson v. Vidders, 126 Iowa 511, 102 N.W. 433 (1905); Cambron v. Pottinger, 301 Ky. 768, 193 S.W. 2d 412 (1946); Tucker v. Nugent, 117 Me. 10, 102 A. 307 (1917); Dunn v. Elliott, 101 Neb. 411, 163 N.W. 333 (1917); Grandy v. Sawyer, 62 N.C. (Phill Eq) 8 (1866); Wilberding v. Miller, 88 Ohio St. 609, 106 N.E. 665, L.R.A.

1916A 718, supp. op. 90 Ohio St. 28, 106 N.E. 666, L.R.A. 1916A 722 (1913); Burton v. Kinney, 191 Tenn. 1, 231 S.W. 2d 356, 19 A.L.R. 2d 366 (1950); Anno., 19 A.L.R. 2d at 373.

A few courts have held that both the remainder to testator's heirs and to the spouse's heirs are vested at the death of the testator. Jones v. Knappen, 63 Vt. 391, 22 A. 630, 14 L.R.A. 293 (1891); Witmer's Executors v. Ebersole, 5 Pa. 458 (1846); Anno., 19 A.L.R. 2d at 377-378.

Another line of authority, which we consider is applicable in this case, holds that wills giving a life estate to the testator's spouse, with remainder to be divided equally between the testator's heirs and the spouse's heirs, create contingent remainders in each group of heirs, the takers to be determined at the time of the death of the life tenant. Craig v. McFadden, 191 S.W. 203 (Tex. Civ. App. 1916); Re Diehl's Estate, 66 Pa. D & C 530 (1949); Re Burk, 298 N.Y. 450, 84 N.E. 2d 631 (1949), reh. den., 299 N.Y. 308, 86 N. E. 2d 759, 300 N.Y. 498, 88 N.E. 2d 725; Van Driele v. Kotvis, 135 Mich. 181, 97 N.W. 700 (1903); Jones v. Petrie, 156 Kan. 241, 132 P. 2d 396 (1943); Bisson v. West Shore Railroad Co., 143 N.Y. 125, 38 N.E. 104 (1894); King v. Howell, 120 S.W. 2d 298 (Tex. Civ. App. 1938); Hardin v. Crow, 310 Ky. 814, 222 S.W. 2d 842 (1949); Barnards Estate, 351 Pa. 313, 41 A. 2d 578 (1945); Irvin v. Brown, 160 S.C. 374, 158 S.E. 733 (1931); Fargo v. Miller, 150 Mass. 225, 22 N.E. 1003, 5 L.R.A. 690 (1889).

3 Powell, Real Property, section 375, p. 224 makes this perceptive observation, citing some of the above cases:

"Similarly, the circumstance that the plan of gift envisaged equal halves of the estate going to the relatives of two spouses can cause the postponement of the time of ascertainment when the normal date for ascertainment would disturb this equality. . . .

"As, for example, when A creates a trust for his wife B and gives the residue of his estate in equal shares to the next of kin of B and to the next of kin of A. Picking A's next of kin at the moment of A's death would give B a bite into the second half of the residue. Under these circumstances A's next of kin are commonly picked as of B's death, . . ." See 4 Page on Wills (Bowe-Parker Rev., 1961), p. 522.

Simes and Smith, sec. 735, p. 208, state:

"A considerable number of courts have refused to imply the exception of the heir who received the present interest, though others have done so. It is clear, however, that the fact that the person who is the donee of the present interest is an heir of the testator may be sufficient, when coupled with other facts, either to support the conclusion that heirs of the testator are to be determined as of the death of the possessory owner, or that the possessory owner is to be excluded from the class of heirs."

The American Law Institute summarizes the general rule (determining takers at testator's death), and discusses the numerous qualifications upon it. 3 A.L.I., Rest. of Property, sec. 305. It recognizes that a spouse who comes within the primary meaning of the descriptive term "heirs", employed to describe the beneficiaries, may be excluded by additional language or circumstances. *Ibid.*, p. 1680. Accordingly, the Restatement summarizes the prevailing rule in this way:

"In cases where the conveyor makes a gift to the 'heirs' of a designated person and to the 'heirs' of the wife of such person, the equality of distribution between the two sets of heirs would commonly be destroyed if the wife of the designated person is allowed to share in the gift to her husband's 'heirs.' Consequently, there is a tendency in such cases to exclude the wife, which tendency becomes very strong when the wife is given a life interest in the subject matter of the gift . . . .

Also the fact that generous provisions have been made for the spouse of the designated ancestor in other provisions of the conveyance tends to establish an intent to exclude her from the gift to the 'heirs'.'' See 3 Rest. of Property, Sec. 305, illustration 12, pp. 1690-1691.

5 American Law of Property (1952), sec. 22.59 analyzes the issue in this way:

''A spouse, however, frequently is excluded on a showing of additional circumstances which are not regarded as sufficient to justify the exclusion of persons who are related by blood to the ancestor. Thus, the fact that a surviving wife is well provided for in other clauses of the will is enough to warrant a finding of an intent to exclude her. If the testator gives one-half of his estate to his own heirs and one-half to his wife's heirs, he has indicated a desire to benefit equally two distinct groups. If his wife is allowed to take a share under the gift to his heirs, more than one-half of the property may eventually pass to the heirs of the wife. Thus, in such cases some courts have found a basis for excluding the wife from the gift to the testator's heirs.''

See also 96 C.J.S., Wills, sec. 695(5)(d), p. 52; 57 Am. Jur., Wills, secs. 1279-1290; 33 Am. Jur., Life Estates, Remainders, etc., secs. 121, 137, 139.

Casner, Construction of Gifts to ''Heirs'' and the Like, 53 Harv. L. Rev. 207, 225, 240 (1939), considered the authorities in detail in a predicate to his chapter in the American Law of Property. In addition to that quoted above, he says:

''When the inclusion of the taker of the prior interest in the gift to the described group obviously defeats the intention of the testator which is manifested by the creation of the prior interest, some device should be adopted to exclude him. The device of postponing the application of the statute rather than the device of applying the statute at the normal time and excluding the prior taker from the group so ascertained is em-

ployed much more frequently to accomplish the purpose. One explanation for this may be that where it makes a difference which device you employ, if the heirs are ascertained at the ancestor's death and the prior taker is excluded, the property may pass out of the blood of the ancestor before the period of distribution.

"Many other factors frequently found in limitations to 'heirs' and the like are relied upon by the courts in holding that the statute is to be applied subsequent to the death of the ancestor." See also Simes, Knouff, Leonard, The Meaning of "Heirs" in Wills - - A Suggestion in Legal Method, 31 Mich. L. Rev. 356, 363 (1932).

(Hn 3) There are no cases from this jurisdiction directly in point. As previously noted, Mississippi follows the general presumption of vesting at testator's death. However, in Beck v. Booth, 144 Miss. 493, 110 So. 204 (1926), the will gave a life estate to the wife "and at her death this property to return to my estate and be a part of the same, to be equally divided among my heirs who may be living at that time." The intent was manifest. The estate vested in testator's heirs living at the time of death of the widow, the life tenant. The limitation was of a contingent remainder.

Patterson v. Patterson, 150 Miss. 179, 116 So. 734 (1928), involved a will devising all of testator's property to the widow for life, granting control and benefits of the property to unmarried children at time of her death, with disposition after all children were married, and thereafter to be divided equally among the living children. It was said testator did not intend the remainder should vest at his death. It was conditioned upon the happening of events which could not be known or determined at that time. The remainder was contingent, vesting at the death of the life tenant if all children then living were married, and if not, at such time thereafter as all of them became married. Cf. Magee v. More-

head, 154 Miss. 828, 123 So. 881 (1929) (where the aspect of two classes did not arise).

## II.

In summary, Thompson's intent, derived from all the circumstances, was to devise in remainder one-half of his property among his wife's heirs, and one-half among his heirs, determined as of the death of the life tenant, his widow. There were two classes in remainder, her and his heirs.

On testator's death Bertha, the life tenant, was Thompson's sole heir at law. Miss. Code 1942, Rec., sec. 470.

If the remainder to his heirs vested at his death, Bertha and her heirs would take ultimately the entire estate: she would take all as a life tenant; she would take one-half of testator's property in its entirety; and finally, her heirs would thereafter receive the entire estate.

Yet it is manifest that Thompson intended a fair and equal division between the two. Item II states that "upon her death" (the life tenant's) one-half "to be divided" among Bertha's heirs and "one-half to be divided among my heirs." The idea for an equal division is expressly stated. The plan of gift envisaged equal halves of the estate going to the heirs of the respective spouses. This equality of distribution between two sets of heirs would be destroyed, if the wife should take all of the gift to her husband's heirs. This purpose is negated further where the wife, as here, is given a life interest in the subject matter of the gift. Thompson made generous provisions for her by leaving her a life estate in all of his property.

In short, if the wife is allowed to take as the testator's sole heir, all, not one-half, of the remainder will pass to a group consisting of the wife and her heirs. And in this event, Thompson's plan to benefit equally his own

heirs and the heirs of his wife would be defeated. His will shows a desire to benefit equally two distinct groups. These circumstances reflect an intent contrary to the presumptive rule of construction determining testator's heirs at the time of his death. They manifest a purpose to identify his heirs at the time of the death of the life tenant. With reference to the one-half to be divided among Bertha's heirs, the general rule determines those remaindermen at the time of the death of the ancestor, Bertha, the life tenant.

(Hn 4) The will gives no indication of any intention to discriminate between his people and her people. Thompson must have known that his wife was his sole heir if she survived him. If he had intended the half going to his heirs to vest immediately at his death, he already being well advanced in years, presumably he would have said so. The absence of such a statement warrants an inference this was not his intent. Although the law favors early vesting of estates, that result is not expressed in this will. The presumption of early vesting is only a rule of interpretation, one means of ascertaining a dispositive intention. It should not be used to defeat what from the whole instrument appears with reasonable certainty to have been his intention, namely that both class gifts in remainder should be contingent until termination of the widow's life estate.

Bertha was advanced in years at the time Thompson made his will, and at his death. Her subsequent marriage to Houston resulted in her dying with two heirs, Houston and her son. No doubt Thompson had no idea that his wife would marry again. However, the remainder to her heirs does not indicate an intent to exclude from that group any of her heirs. The dominant purpose was to give one-half of his property to Bertha's heirs. There was no qualification on membership in that class, and it included her third husband living at her death.

### III.

The chancellor ordered a partition by sale. Parcel 1 contains 184 acres, Parcel 2, 132 acres. The case was submitted on the pleadings and a stipulation of facts. Dailey's answer asserts that Parcel 1 is worth $75 an acre, or a gross value of $13,800; that Parcel 2 is worth $150 an acre, or a gross value of $19,800. On this basis, the total market value is $33,600.

The decree adjudicated that complainants and the defendant (Dailey) owned the following proportionate interests in the two tracts:

|  | Parcel 1 (184 acres) | Parcel 2 (132 acres) |
|---|---|---|
| Enoch Terry | 1/44 (.0227272%) | 1/88 (.0113636%) |
| Grant Terry | 1/44 (.0227272%) | 1/88 (.0113636%) |
| John Houston | 29/110 (.2636322%) | 29/220 (.1318181%) |
| Willie Dailey | .6909094% | .8454547% |

(Hn 5) In brief, Dailey owns 69% of Parcel 1 (184 acres) and 84½% of Parcel 2 (132 acres). Under these circumstances, it was error for the chancery court to order a partition of the land by sale, rather than in kind. Partition by sale may be had only if sale of the land "will better promote the interests of all parties than a partition in kind, or if the court be satisfied that an equal division cannot be made . . ." Miss. Code 1942, Rec., sec. 965. Dailey objected to it, asserting that the best interests of the parties would be served by a partition in kind.

(Hn 6) A partition in kind is preferred. The law looks with disfavor upon a sale of lands for partition. A person seeking to have a sale must bring his case clearly within the statute. Partition by sale proceedings take from the owner of land his right to keep his freehold. Shorter v. Lesser, 98 Miss. 706, 54 So. 155 (1910); Cox v. Kyle, 75 Miss. 667, 23 So. 518 (1898); Smith v. Stansel,

93 Miss. 69, 46 So. 538 (1908); Hilbun v. Hilbun, 134 Miss. 235, 98 So. 593 (1923).

(Hn 7) There was no evidence introduced on the issue of whether a partition by sale would come within these requirements. In the absence of evidence that a sale will better promote the interests of the parties or an equal division in kind cannot be made, a sale should not be ordered. Dantone v. Dantone, 205 Miss. 420, 438-439, 38 So. 2d 908 (1948). In the instant case Dailey owns 69% of Parcel 1 and 84½% of Parcel 2. There is no reason why this substantial interest should not be set off to appellant in kind. (Hn 8) The chancery court has ample discretion to provide for a sale or other adjustment of the property interests of the complainants. For example, it may order a sale of only a part of the lands sought to be partited. Miss. Code 1942, Rec., sec. 965, as amended by Miss. Laws 1958, ch. 251; Code sec. 966; Carter v. Ford, 241 Miss. 511, 130 So. 2d 852 (1961). It was in error to order a partition by sale.

(Hn 9) The fact that the $1,000 bequest to the school constitutes a lien on the property does not preclude partition in kind. The lien would continue to exist. The trial court can fashion a decree for protection of this legacy.

Apparently the chancellor ordered that fees of appellees' attorneys should be charged against the whole estate in proportion to the parties' interests. Code sec. 975 provides:

"In all cases of the partition or sale of property for division of proceeds, the court may allow a reasonable solicitor's fee to the solicitor for the complainant, to be taxed as a common charge on all the interests, and to be paid out of the proceeds in case of a sale, and to be a lien on the several parts in case of partition."

(Hn 10) This statute was intended primarily to give a fee to the solicitor who conducts the suit without resistance. Where there is a real controversy, and it is proper

for defendants to be represented by counsel of their own choosing, the fee permitted by section 975, to be taxed as a common charge upon all of the interests, should not be allowed. This is especially so where, as here, a defendant is successful in part, by preserving some of his claims, through his own initiative and the efforts of his own counsel. Billingsley v. Billingsley, 114 Miss. 702, 75 So. 547 (1917); Hoffman v. Smith, 61 Miss. 544 (1884); Hardy v. Richards, 103 Miss. 548, 60 So. 643 (1912). This is not a proper case for allowance of the fee under section 975.

In summary, that portion of the decree adjudicating that the will created contingent remainder interests in two classes, heirs of the testator and of the life tenant, both to be determined as of the death of the life tenant, is affirmed. Those parts of the decree ordering a partition by sale, and assessing attorneys' fees for complainants' solicitors upon the entire estate, are reversed. The cause is remanded to the chancery court for further proceedings consistent with this opinion. One half of the costs of this appeal will be taxed against appellant, the other half against appellees.

Affirmed in part, reversed in part, and remanded.

*McGehee, C. J., and Kyle, Arrington, and Gillespie, JJ.,* concur.