Wight et al. v. Ingram-Day Lumber Co.

(In Banc. Feb. 28, 1944. Suggestion of Error Overruled March 27, 1944.)

[17 So. (2d) 196. No. 35536.]

824

Hannah, Simrall & Foote, of Hattiesburg, and Gardner & Backstrom, of Gulfport, for appellants.

**White & Morse,** of Gulfport, for appellee.

Argued orally by **T. C. Hannah,** for appellants.

**Alexander, J.,** delivered the opinion of the court.

The Ingram-Day Lumber Company filed its bill for partion by sale of the mineral interests in certain lands

in Harrison County. The lumber company owns the entire surface of said lands and an undivided one-half interest in all minerals therein. The appellants likewise own an undivided one-half interest in the minerals.

The bill alleged that the several mineral estates are not susceptible of partition in kind and that it is to the best interest of all the tenants in common that the mineral estates be sold for division among the parties. It is further alleged that in the present status of ownership "there exists an impediment to the sale of the lands herein described." To the bill there were two joint answers. Decree was taken against the defendants, directing a sale of all the mineral interests with division of the proceeds.

We shall proceed directly to our statute. Section 961, 1 Miss. Code 1942, Section 2920, Code 1930, provides for the partition by tenants in common of any joint interest in the freehold. The parties hereto are such tenants in common and the mineral estate is such freehold. Cf. Stokely v. State, 149 Miss. 435, 115 So. 563; Jilek v. Chicago, W. & F. Coal Co., 382 Ill. 241, 47 N. E. (2d) 96, 146 A. L. R. 871. There remains only the question whether such estate can be partited in kind. If it can be so effected, it may not be sold for division. Smith v. Stansel, 93 Miss. 69, 46 So. 538; Shorter v. Lesser, 98 Miss. 706, 54 So. 155; Hilbun v. Hilbun, 134 Miss. 235, 98 So. 593. The burden of establishing their nonsusceptibility to partition in kind is upon the complainant, Hogue v. Armstrong, 159 Miss. 875, 132 So. 446; Hilbun v. Hilbun, supra, especially in view of the history of our statute which, as an innovation upon the common law, requires an adequate showing to this effect. Cox v. Kyle, 75 Miss. 667, 23 So. 518.

We are of the opinion that the several mineral ownerships or estates here involved are capable of division in kind, and that it was reversible error to hold otherwise. In so deciding we are not laying down nor recognizing a universal rule in such matters. As to whether it is physically possible or economically practicable, or whether

it will better promote the interest of all parties to decree sale, each case must supply its own criteria. The total acreage involved is approximately 3,100 acres. In this connection it is in point to notice that in the separate answer of Wight and Stern heirs it is not only averred that the lands are suitable for division in kind but that any division should be so made. Such allegations in both answers were stricken on complainant's motion, evidently under pressure of Stern v. Great Southern Land Co., 148 Miss. 649, 114 So. 739, 740, hereinafter to be discussed. Offer is made in the answer to combine the interests of these defendants in a single unit for purposes of division in kind. Such unit would approximate 1,000 acres. In the separate answer of the Camp and Hinton heirs a similar offer is made. Any division so effected would, therefore, result in the allotment of units, the smallest of which would be substantial and workable, and the offer of the defendants to this end renders plausible the contention that a partition in kind would not by extended subdivision render any allotment too minute to be usable or merchantable.

We are aware of the apparent conflict of these views with Stern v. Great Southern Land Co., supra. We there held that tenants in common of minerals may have their interests partited. We wish to reaffirm this view. However, we must reexamine the assumption that such estates may never be divided in kind. The case was decided seventeen years ago at a time when there was no development of oil and gas in this state. In the meantime valuable mineral fields have been explored and exploited. It was there decreed that certain lands jointly owned in respect to their mineral interests could only be sold for partition. The basis for affirmance was that "to partition the deposits of clay, oil and minerals here involved, if feasible, it seems could only be done through an expensive and protracted mining scheme inaugurated and carried out by the chancery court." It was held that such situation was "self-evident" and required no proof.

The court was concerned with the fact that it was not known where such deposits were located and that their existence or location "could not be ascertained, positively, without an expensive mining operation which might cover months, and possibly, years." The case turned, therefore, upon facts supplied by judicial notice. It was stated in Mitchell v. Cline, 84 Cal. 409, 24 P. 164, 166, "whether or not a partition can be made without great prejudice to the owners is a question of fact, the decision of which is not aided by judicial notice of any fact or circumstance not proved." To the same effect are Smith v. Greene, 76 W. Va. 276, 85 S. E. 537; Ryan v. Egan, 26 Utah, 241, 72 P. 933; Carolina Mineral Co. v. Young, 220 N. C. 287, 17 S. E. 2d 119.

Even if it be true, as to which we express no opinion, that generally minerals in situ cannot themselves be divided in kind, it is in point here that we are dealing only with minerals, the uncertainty of whose extent or even existence is a circumstance which invests each unproven acre with a present equal market value. The evidence in the instant case establishes that there is no information of circumstance which would indicate that any particular acre is of any greater present worth than another. In any division, therefore, the very uncertainty as to its potentialities is itself an added earnest of impartiality.

We may not pause to contrast the incidental benefits attributable to a partition by sale, since such sale would be improper if a division in kind is feasible. To contend that "a sale would better promote the interest of all parties" is (1) to ignore the expressed wish of the defendants to retain their present mineral ownerships with their speculative incidents, and (2) to assume that a single ownership favorable to ultimate development can be effected only by sale. As to the latter contention, it is evident that each parcel allotted in kind would be of substantial and usable area and would carry exclusive title respectively to all minerals therein.

Moreover, one of the ingredients of a cotenant's title to minerals is the speculative chance which is an acknowledged asset of ownership. As stated in Lynch v. Union Inst. for Savings, 159 Mass. 306, 308, 34 N. E. 364, 20 L. R. A. 842, "A particular piece of real estate cannot be replaced by any sum of money, however large; and one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money. A title to real estate, therefore, will be protected in a court of equity by a decree which will preserve to the owner the property itself, instead of a sum of money which represents its value." The halting of defendants' purpose—to retain ownership in kind—under the challenge of uncertainty, would be to vouchsafe to them the scanty option of being deprived of their holdings either now or later, and thus to make of uncertainty an ally of injustice.

The test of feasibility, therefore, should relate not to the difficulty of ascertainment of that which is speculative, but rather to the practicability of division of that which is apparent. The disharmony in the decisions upon this point is not so much in the statement of a rule but rather in its application to diverse factual situations. It may be true, as stated in the Stern case, that the existence or location of any subsurface minerals is a "matter of opinion." However, in the aspect an impartial distribution by surface allotments of ample area would reduce the possibility of any disparity between present assumptions of equality and future disclosure of inequality to an acceptable minimum. The possibility that future exploration may reveal such disparity in fact, if effectual as an argument against a division in kind, would be equally so as against a divestiture of the respective interests by sale, or the allotment of the surface rights in kind. Such possibility is an inevitable but inconsiderable hazard in every transaction of division or sale.

We would not therefore disturb the substantive holding in the Stern case. The effect of this decision, however, was to diminish the force of Hilbun v. Hilbun, supra, by creating in mineral estates an artificial exception. We are compelled, therefore, to exclude from the outreach of judicial notice the generality that mineral estates may not be divided in kind. We must deny to such case the authority to lend to appellee's case the leverage of such assumption to sustain the evidentiary burden of proving that which, in the light of a new awareness of tested development practices, is not acceptable as a generality.

We find the foregoing views supported by both reason and authority. Ryan v. Egan, 26 Utah 241, 72 P. 933; Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; Manley v. Boone, 9 Cir., 159 F. 633, 87 C. C. A. 197; Mitchell v. Cline, supra; Royston v. Miller, C. C., 76 F. 50; Henderson v. Chesley, (Tex. Civ. App.), 273 S. W. 299; Id., 116 Tex. 355, 292 S. W. 156; 40 A. L. R. 1408; Morley v. Smith, 93 W. Va. 682, 118 S. E. 135; 36 Am. Jur., Mines & Minerals, sec. 205; Glassmire, Oil & Gas Leases and Royalties, sec. 79; 2 Thornton, Oil and Gas (5th Ed.), sec. 436; 3 Summers, Oil and Gas (Perm. Ed.), sec. 536. See especially Tuggle v. Davis, 292 Ky. 27, 165 S. W. 2d 844, 143 A. L. R. 1087 and extensive case note.

Reversed and remanded.

### DISSENTING OPINION.

**Anderson, J.**, delivered a dissenting opinion.

The decision in the Stern case, 148 Miss. 649, 114 So. 739, is sound and supported by a majority of the courts in this country. 3 Summers, Oil and Gas, p. 235, sec. 536, the cases referred to in the notes, one of which is the Dangerfield case (Dangerfield v. Caldwell, 4 Cir., 151 F. 554) cited in the opinion in the Stern case.

In the Stern case, as here, there was involved a construction of the partition statutes (Sections 2920 and 2924, Code of 1930), Sections 961 and 965 (especially the latter), Vol. 1, Code 1942. In previous decisions our court held that there could be no sale and division of the proceeds between those interested under Section 965 unless it was proven to the satisfaction of the court that an equal partition in kind could not be had. Hilbun v. Hilbun, 134 Miss. 235, 98 So. 593; Hogue v. Armstrong, 159 Miss. 875, 132 So. 446; Smith v. Stansel, 93 Miss. 69, 46 So. 538; Shorter v. Lesser, 98 Miss. 706, 54 So. 155. In the Stern case, construing the same statute, the court held that those decisions had no application to minerals under the ground; that they were not susceptible of partition in kind needed no proof; that the court would take judicial notice of that fact; in other words, that the court knew what everybody knew was a fact. Since the decision in the Stern case the legislature has held eight sessions and no change whatever has been made in either of those statutes. The re-enactment of a statute which has been judicially construed is an adoption of that construction, unless a contrary intent clearly appears. White v. Illinois Central R. Co., 97 Miss. 91, 52 So. 449, 55 So. 593; Thacker v. Illinois Central R. R. Co. (Miss.), 55 So. 595; Hamner v. Yazoo Delta Lbr. Co., 100 Miss. 349, 56 So. 466; Thompson v. Person, 177 Miss. 63, 170 So. 694. It was held in the Thompson case that where a statute was construed by the Supreme Court and afterwards re-enacted by the legislature, such construction "[became] a part of [the] newly-enacted statutes as fully as if expressly written therein."

A sale and division of the proceeds come nearer affording equality among the owners of the minerals than a "checkerboard" partition in kind. At a sale to the highest and best bidder everyone, including the parties interested, has an equal right to bid. Each bidder uses his own judgment as to where the minerals will most likely be found. On the other hand, if there is a division in kind

no one of the interested parties has any right to choose what part shall be set aside to him. Commissioners appointed by the chancery court have the exclusive right to decide that question, subject, of course, to approval by the court. Now, which method comes nearest approaching equality? It seems to me to ask that question is to answer it. But admit that such a partition in kind would be nearer the right method, will the court now adopt it in view of the re-enactment of the statutes in the Codes of 1930 and 1942.

There is another matter of consideration in determining this question. By Chapter 191, Laws of 1936, the State Oil and Gas Board was given large powers to control where and under what circumstances oil and gas may be bored for. Under that Act the Oil and Gas Board has passed an ordinance regulating those matters so far as the Tinsley Field is concerned, and, of course, has the same authority with reference to any other field that might be developed.

The majority opinion does not overrule the Stern case in so many words but it does in effect. It holds that the question is open in each particular case whether or not the minerals can be divided in kind. The Stern case holds exactly the contrary.