### ARMSTRONG *v.* BELL.

(In Banc. Dec. 10, 1945.)

[24 So. (2d) 10. No. 35969.]

Wells, Wells, Newman & Thomas, of Jackson, and Engle & Laub, of Natchez, for appellant.

Luther A. Whittington and Brandon, Brandon & Hornsby, of Natchez, for appellee.

Argued orally by **Gerard Brandon**, for appellee.

**McGehee, J.**, delivered the opinion of the Court.

This suit was filed by the appellee, W. M. Bell, to quiet his title to a 1/32 royalty interest in all gas, oil and other minerals on approximately 3,000 acres of land which he had conveyed to the appellant, George W. Armstrong, on July 2, 1936, under a reservation or exception in that behalf, and to cancel as a cloud upon his title thereto the claim being made by the defendant Armstrong to the effect that the complainant Bell now owns only a 1/32

interest in the oil, gas and other minerals in place on said land, instead of a 1/32 royalty interest therein, under the reservation made in the said deed of conveyance.

The deed of conveyance recites that:

"I, W. M. Bell, do hereby convey and warrant subject to the reservation hereinafter made to George W. Armstrong all those certain tracts and parcels of land composing what is known as the "Ivanhoe Plantation" situated on the east bank of the Mississippi River, and lying and being situated in the County of Adams, and the State of Mississippi, to-wit: (Here appears a paragraph in the deed fully describing all of the land.)

"Notwithstanding the warranty of title herein, I, the undersigned, W. M. Bell do hereby reserve and except from the conveyance herein a 1/32 of all gas, oil or minerals which may hereafter be found, discovered, mined or produced from the above described lands. It is understood that there is now outstanding, and this deed is made subject thereto, a lease of said lands executed by the undersigned, conveying oil, gas and mineral rights and privileges in said lands, said lease being dated April 1, 1936 and of record in Record Book —, page — in the office of the Chancery Clerk of Adams County, Mississippi; it is further distinctly agreed and understood that under the above reservation I am to receive 1/4 of the 1/8 royalties provided in said lease in the event oil, gas or minerals are found on said lands or produced therefrom during the period of said lease.

"It is further understood that all rents provided to be paid hereafter under the terms of said lease are to be paid to the grantee herein, and that upon the expiration of said lease the grantee herein shall have the full power and authority to execute other leases on said lands for oil, gas or minerals on whatever terms he may desire, save and except, I am to receive the 1/32 share of said oil, gas or minerals found, mined or produced from said lands above reserved by me and specifically excepted

from this conveyance. The intent of the reservation herein made by me is to reserve for myself, my heirs and assigns a 1/32 share in fee simple of all gas, oil or minerals of any kind which may be produced or mined from said lands hereafter; the grantee herein to have full authority and power to lease said land and to receive the said rentals on said lease on such terms as he may wish, the sole condition of such lease being that I am to receive 1/32 royalty from any gas, oil or minerals mined or produced under such lease.''

The most important question for decision on this appeal is whether or not the grantor in this deed reserved unto himself a 1/32 royalty in the gas, oil or other minerals that may be mined or produced under any future lease that might be executed by the grantee after the expiration of the then outstanding lease, or, on the other hand, reserved only a 1/32 interest in the oil, gas and other minerals in place insofar as any future lease that might be executed by the grantee is concerned, it being conceded and admitted by the appellant-grantee that a 1/32 royalty interest or a $\frac{1}{4}$ of the $\frac{1}{8}$ royalty was reserved unto the grantor insofar as the outstanding lease at the time of the execution of the deed is concerned.

It is to be observed in the outset that the deed does not contain an unqualified granting clause. The granting clause preceding the description of the land declares that the grant and warranty is ''subject to the reservation hereinafter made.'' Moreover, it is significant that the word ''reservation'' is in the singular throughout both the granting clause and all of the recitals pertaining to that which is reserved unto the grantor; that is to say, there was only one reservation anywhere mentioned in the deed, and therefore the question is whether the $\frac{1}{4}$ of the $\frac{1}{8}$ royalty which is admittedly reserved unto the grantor under the then outstanding lease is to likewise pertain to any future lease which the conveyance authorizes the grantee to make after the expiration of the existing lease.

It is true that immediately following the description of the land, the grantor declares the reservation to be "a 1/32 of all gas, oil or minerals which may hereafter be found, discovered, mined or produced from the above described lands," but in connection therewith the instrument proceeds to declare that (1) it is understood that the deed is made subject to an outstanding oil, gas and mineral lease therein mentioned; and (2) that the grantor is to receive "¼ of the ⅛ royalties provided in said lease" in the event of production; and (3) that the grantee is to receive all of the rents to accrue under the then existing lease, and it is further provided that this shall likewise be true as to the rents that may accrue under any future lease; and (4) that upon the expiration of the then existing lease the grantee should have full power and authority to execute other leases on said lands for oil, gas and minerals on whatever terms he may desire "save and except, I (the grantor) am to receive the 1/32 share of said oil, gas or minerals found, mined or produced from said lands above reserved by me and specifically excepted from this conveyance," the word "the" appearing before "1/32 of said oil, . . . " clearly indicating that it has reference to the "¼ of the ⅛ royalties" thereinbefore mentioned, and "above reserved by me," and that the words "found, mined or produced" has reference to the said "¼ of the ⅛ royalties"; and (5) that the intent of the reservation, which again appears in the singular, is that the grantor reserves for himself, heirs and assigns a 1/32 share of all gas, oil or other minerals of any kind which may be produced or mined from said lands "hereafter," which we interpret to mean whether under the existing or any future lease, since there immediately appears following the word "hereafter," the provision that the grantee is to have full authority and power to lease said lands and to receive said rentals on said lease on such terms as he may wish, "the sole condition of such lease being that I am to receive 1/32 royalty from any gas, oil or minerals

mined or produced under such lease." In other words, instead of there being one reservation of a "$1/4$ of the $1/8$ royalties" under the existing lease and another reservation of a 1/32 interest in the oil, gas and minerals in place as the same may pertain to any future lease, upon the theory that such last purported reservation of a 1/32 royalty under a future lease is in conflict with the granting clause, as contended by the appellant, there is only one reservation referred to throughout the entire recitals of the deed, and it pertains both to the existing lease and any future lease.

It is true that the Court held in the case of McNeese v. Renner et al., 197 Miss. 203, 21 So. (2d) 7, 8, that a conveyance reserving to the grantor an undivided one-fourth interest in and to all minerals, oil and gas "that might hereafter be discovered on the land" reserved to the grantor and its assignees a present undivided interest in the minerals (in place) that might be discovered. But, in that instance the grantor then owned all of the minerals in place, there being no outstanding mineral lease against the land, whereas in the instant case the grantor Bell did not own the minerals in fee simple when he executed his conveyance to the grantee Armstrong. Nor did the deed in the case of McNeese v. Renner et al., supra, contain provisions expressly reserving a royalty interest, such as those found in the deed here before us.

The record discloses that about two months prior to the execution of the deed in the case at bar, the grantor executed an oil, gas and mineral lease in favor of one Stokes, mentioned in the reservation here under consideration, from which he was to receive annual rentals of $850 and as a further consideration was to have and receive $1/8$th of any oil, gas and other minerals that may be produced from the land. This outstanding lease was to run for a period of ten years. It was recorded on the next day following the execution of the deed of conveyance here involved, and was not relinquished and cancelled until the following year. Therefore, there was

left to the grantor Bell only the fee simple title to the soil, the right to receive the rentals and the ⅛th royalty if production was had under the lease, and the reversionary interest in the minerals in place if the lease expired by its terms or was permitted to lapse. In other words, the lessee had the right to exhaust the minerals in place during the life of the lease. It is therefore a reasonable construction that he intended in his conveyance to Armstrong to reserve a part of that which he then presently owned—a part of the royalty interest theretofore reserved in his lease to Stokes.

The contention of the appellant is that the appellee Bell should join the appellant in the execution of any future lease as the owner of a 1/32nd interest in the minerals in place, but we think it clear from the provisions of the reservation that no such situation or necessity was contemplated by the parties to this conveyance.

If it be true that the reservation is ambiguous, then we are entitled to look to the entire language of the instrument to determine its meaning, and this is true notwithstanding that a conveyance is to be construed most strongly against the grantor. If by doing so, we are able to ascertain the clear meaning of the instrument as a whole, the grantor does not lose the royalty interest intended to be reserved merely because he may have executed and delivered a conveyance that may be ambiguous in some of its provisions when considered separate and apart from the entire language employed. In the case of Williams v. Batson, 186 Miss. 248, 187 So. 236, 128 A. L. R. 1138, this view is fully sustained under the principles of construction which are quoted in the controlling opinion from 1 Rest. Contracts, Secs. 226, 230, 236; 13 C. J. 535; 17 C. J. S. Contracts, sec. 309; Williston on Contracts (Rev. Ed.), Secs. 601, 607, 618, and 619, and also by the principles of construction set forth in the dissenting opinion therein.

Under Section 572, page 349, of Summers Oil and Gas (Perm. Ed.), Vol. 3, it is said:

"Royalty interest may be created prior to any lease for oil and gas purposes. In some jurisdictions a grant or reservation of a royalty prior to a lease has the effect of creating separate mineral fee estate in the oil and gas or in the right to produce them, but if such interest is restricted to the right to receive a portion of the oil or gas produced with no right in the owner thereof to join in future leases, or to receive a portion of the bonus or delay rentals, the interest is a perpetual non-participating royalty."

It will be noted from the language of the reservation in the deed here involved that the interest reserved by the grantor is expressly restricted both as to his rights under the outstanding lease and under any future lease to receiving a portion of the oil or gas produced, with no right reserved in the owner thereof to join in future leases or to receive a portion of the delay rentals, and we are, therefore, of the opinion that the grantor in the instant case intended to reserve, and did reserve, a perpetual nonparticipating 1/32nd royalty; that the provision contained in the deed to the effect that "the intent of the reservation herein made by me is to reserve for myself, my heirs and assigns, a 1/32nd share in fee simple of all oil, gas, minerals of any kind which may be produced or mined from said lands hereafter" is a reservation of a 1/32nd perpetual non-participating royalty in the gas, oil or other minerals which may be produced or mined from said lands at any time after the execution of the deed of conveyance to the appellant Armstrong, whether the same were produced under the then outstanding lease, or by the said Armstrong, his vendee, heirs or assigns, or by any lessee under any lease that might be executed after the expiration of the then existing lease, the said "intent of the reservation" being further explained by the concluding language thereof that if the grantee under his full authority and power to do so as therein granted should lease said lands in the future he would be entitled to receive the rentals from

such lease, "the sole condition of such lease being that I am to receive 1/32nd royalty from any gas, oil or minerals mined or produced under such lease"; that is to say, that in our opinion it was never contemplated by the reservation that the grantee Armstrong could defeat the purpose of the reservation by his own production, or by production on the part of his heirs or assigns, of the oil, gas or other minerals from said land, it being clear that the grantor Bell intended to provide against any contingency that might defeat his right to receive a 1/32nd royalty from any production that should thereafter take place; and that, therefore, the decree of the trial court in quieting and confirming the right of the grantor Bell, his heirs and assigns, to receive a 1/32nd of all oil, gas or other minerals that may be found, mined or produced from the lands described in the deed of conveyance, that is to say one barrel out of every thirty-two barrels of oil that might be found, mined or produced therefrom, is correct and should be affirmed.

Affirmed.

### DISSENTING OPINION.

**Sydney Smith, C. J.**, delivered a dissenting opinion.

The decree of the court below should be reversed.

The provision in this deed that, "I, the undersigned, W. M. Bell do hereby reserve and except from the conveyance herein 1/32 of all gas, oil or minerals which may hereafter be found, discovered, mined or produced from the above described lands," excepts 1/32 of the oil, gas and minerals in the land from the conveyance and results in the grantor retaining the ownership thereof, McNeese v. Renner, 197 Miss. 203, 21 So. (2d) 7, thereby becoming a tenant in common with the grantee of all the oil, gas and other minerals in the land, Wight et al. v. Ingram-Day Lumber Co., 195 Miss. 823, 17 So. (2d) 196,

unless a subsequent provision of the deed necessitates a different construction thereof.

There are two subsequent provisions of the deed, one of them deals only with the rights of the parties to the deed under the lease of the land theretofore made by the grantor by which the lessee had the right for a limited time to remove oil and gas from the land; the second authorizes the grantee to permit one to whom he leases the land to remove the oil and gas therefrom including the grantor's 1/32 portion thereof. Neither of these provisions in any way limits the effect or changes the meaning of the exception of the oil, gas and minerals from the conveyance of the land.

Under this last provision, the grantee has the right, but is under no obligation to the grantor, to permit others to remove the oil and gas from the land, including the grantor's portion thereof, provided the grantor receives the stipulated portion of it. Should the grantee not care to act on this permission, he has the right, as does the grantor, to deal with the oil, gas and other minerals in the land in accordance with the law regulating tenancy in common.

The court below should have so held, and should have granted the prayer of the appellant's cross bill for a partition of the oil, gas and other minerals in the land. Wight v. Ingram-Day Lumber Co., supra.