ANDERSON *v.* SUN OIL Co.

In Banc. Oct. 10, 1949.

No. 37178 (42 So. (2d) 234)

T. J. Wills, for appellant.

**Robert L. Genin,** for appellee.

336

**Roberds, J.**

The problem for solution on this appeal is the determination of the meaning and effect of an instrument of writing dated February 16, 1935, executed by Hatties-

burg Saw Mill Company to J. H. Pressley, set out as a footnote hereto. [1]

"M D 1180

"State of Mississippi
"County of Forrest

"Know all men by these Presents: That Hattiesburg Saw Mill Company, a corporation incorporated under and by virtue of the laws of the State of Mississippi, and domiciled in the City of Hattiesburg, Mississippi, acting by and through its duly authorized and qualified officers for and in consideration of the sum of ($10.00) Ten Dollars case and other valuable considerations, all fully paid, the receipts of which are hereby acknowledged and confessed, have granted, bargained, sold, transferred, conveyed, set over and delivered and by these presents do grant, bargain, sell, convey, transfer, set over and deliver unto J. H. Pressley of Dallas, Dallas County, Texas, forever, all of the sulphur and also an undivided seven-eighths ($\frac{7}{8}$ths) interest in, to and of all oil, gas and other minerals, except sulphur; whether similar or dissimilar, on, in or under the following described land situated in the County of Forrest, State of Mississippi, more particularly described as follows, to-wit: (Description)

"It is our intention to include in the above description of lands, whether particularly described or not, all of the lands owned by us in the Sections therein referred to, and in the sections adjoining same, except the lands owned by us in Section 25, Township 3N, 13W.

"Together with the right of ingress and egress in, upon, and over said land at all times forever for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom; together with all the rights, rights-of-way, privileges and easements in, on and across the said land, or any part thereof forever, as may be necessary or desirable and to remove such oil, gas and other minerals including water, and to conduct all operations and erect and use thereon all buildings, derricks, tanks, structures, machinery, and equipment as may be necessary or proper for such purpose, together with the right to lay and operate thereon pipe lines, telephone and telegraph lines, and to repair and remove from said land any of Grantee's property thereon at any time, including the right to pull and remove casings.

"Royalty to be paid by Grantee on sulphur shall be fifty cents (50c) per long ton on all sulphur produced, mined and saved, and this agreement of Grantee to pay said sulphur royalty is hereby made and constituted a covenant running with the land. In respect to the undivided one-eighth ($\frac{1}{8}$th) part of and interest in the oil, gas and other minerals, except sulphur, retained and reserved by the Grantor on, in and under said land, it is understood and agreed that said one-eighth interest is and shall always be and operate as a royalty interest, and shall not be charged with any of the costs which the grantee may incur in exploring, drilling, mining, developing and operating wells or mines for the production of oil, gas and other minerals; and if the grantee, its representatives, administrators, or assigns or any person or concern to whom the grantee shall give an oil and gas mining lease thereon shall, by his or their explorations and operations, discover and produce oil, gas and other minerals, the Grantor's one-eighth ($\frac{1}{8}$th) royalty interest above referred to shall

be delivered free of cost to the Grantor at the wells or mines, or to the credit of the Grantor in pipe lines or storage provided by the Grantor.

"It is expressly understood that the Grantee shall never be required, and shall never be under any covenant or obligation, either express or implied, to drill or operate on said lands, or any part thereof, for the discovery of or production of oil, gas and other minerals, and that all drilling operations and development for oil, gas and other minerals, before or after discovery, shall be solely at the Grantee's option and election, and that any wells or mines discovered or drilled by the Grantee may be abandoned or operated by him at any time at his election or discretion, provided that, before Grantor's royalty shall be calculated and determined, all oil, gas and other minerals used for operations by the Grantee on said land, any taxes against the production shall be first deducted.

"Neither party hereto shall be personally liable for any taxes that may be paid by either party hereto on any part of said land, whether in whole or in part, as may be segregated.

The rights and interests, duties and responsibilities herein granted, created and reserved shall extend to the respective heirs, executors, administrators, successors and assignees of the parties hereto, it being agreed that the Grantor shall not be required to join in or ratify any oil and gas mining lease which the Grantee may grant by virtue of his ownership hereunder, and that Grantor shall be entitled to none of the bonus money therefor, and to no part of the delay rentals paid thereunder; it being further understood that any change of ownership of the royalty belonging to the Grantor, whether effected by conveyance, will, partition or otherwise, shall entitle the respective owners only to their proportionate part of said royalty, and that the Grantee shall not be responsible for the payments or delivery of said royalty to any new owners, unless and until he shall be furnished with the instrument of transfer or duly certified copy thereof.

"To Have and To Hold the above described property, rights, interests and privileges, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantee, his executors, successors and assignees; and the undersigned does hereby bind itself, its successors and assigns to warrant forever defend all and singular the said property, rights, interests and privileges unto the said Grantee, his executors, successors and assigns against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

"In the event that it shall be hereafter discovered that there is included in the above description of lands, any lands which are not now owned by Grantors herein, it is the intention of the parties hereto that this instrument shall not be effective as to such lands, it being the intention of the Grantors herein to include only such lands are are now owned by it.

"Executed this 16th day of February, A. D. 1935.

"Hattiesburg Saw Mill Company,
"By, M. Dreyfus
"Its President
"also by Leon H. Dreyfus
"Its Secretary (Asst.)

"Attested:
"Leon H. Dreyfus
"Asst. Secretary
"(Acknowledgment)"

On April 2, 1935, Pressley conveyed to Sun Oil Company the interest and rights acquired by him under that deed. Both deeds covered some 1545 acres of land.

By deed dated July 13, 1942, Hattiesburg Saw Mill Company purported to convey to Fred W. Divilbiss and wife the fee to 120 acres of the land included in the Pressley deed, but excepting and reserving to the grantor a one-half undivided interest in and to all minerals in and under the land conveyed.

On December 16, 1946, Divilbiss and wife conveyed to appellant Anderson "all our remaining mineral interest", which, it is contended, was a one-half undivided interest in and to 52.5 acres of the land described in the deed to Divilbiss.

In January, 1947, Anderson filed the bill in this cause against Sun Oil Company contending (1) that the Pressley conveyance was a lease without express provision as to the limit of time within which the rights thereunder had to be exercised; (2) that in such case the rights had to be exercised within a reasonable time, and (3) that a reasonable time for such exercise in Mississippi is ten years, which time had expired when the bill was filed; that, therefore, Sun Oil Company then possessed no rights under the Pressley deed, and its claim to an interest in the 52.5 acres constituted a cloud upon the title of Anderson thereto, which he had the right to have removed by a court of equity.

The chancellor dismissed the bill and Anderson appeals. We deem it unnecessary to undertake to label or define the Pressley instrument by a theoretical definition thereof. It is enough that we determine the property interests and rights vested in, and the duties imposed upon, the parties to that document.

Now, as to the sulphur: Grantee is vested with the title thereto in place, but such title is burdened with the obligation, which runs therewith, to pay therefor 50¢ per long ton if and when sulphur is found, produced and

saved by grantee or another claiming through said grantee. It might be noted here that the conveyance itself vests in the grantee's executors, successors and assigns the same rights and imposes upon them the same duties as are vested in and imposed upon the grantee, and when we use in this opinion the word grantee we include such legal representative, successors and assigns of the grantee.

As to the minerals other than sulphur, it is noted that the granting clause is in the form of a warranty deed to seven-eighths of the minerals. The grantee is vested with title in place to that undivided fractional interest, with all the rights and power of sale, lease, operation and production which result from absolute ownership of such interest.

As to an undivided one-eighth of the minerals, the grantor excepted and retained that in itself but vested in the grantee the right and power to explore for, mine and produce that one-eighth, along with the seven-eighths, and if and when production might be had, imposed the obligation on grantee to deliver such one-eighth to the grantor, in the manner and at the places and times, set out in the contract, free of any of the expense and cost of production and delivery, except that before such one-eighth shall be determined "all oil, gas and other minerals used for operations by the grantee on said land, and all taxes against production, shall be first deducted".

The grantee is given the power to execute a lease covering said one-eighth, along with the seven-eighths, without the signature of the grantor.

It is further provided, in express terms, that the grantee is under no duty or obligation to explore for, drill or mine for minerals, this being purely optional with him, and if development is undertaken, or begun, it may be abandoned at any time, at the option and election of grantee, before or after the discovery of oil, gas or other minerals.

In case grantee should execute a mineral lease on all or any part of the lands, grantor is not entitled to any part of the bonus money or delay rentals thereunder.

The property interest so vested in grantee, and the respective rights, powers and obligations so imposed upon the parties to the instrument, are not consistent with those flowing from the usual mineral lease.

Grantee is under no duty to explore and develop; no time limit is fixed for exercise of the rights conferred; no provision is made for extending such time had it been fixed; no bonus or rentals are to be paid; grantee may execute a'lease as to the one-eighth interest without the signature of grantor; the title vested in grantee is by a clause in form of a warranty; no reversionary interest is retained by grantor. Other differences might be noted. So much for the nature of the instrument.

As to the authorities, the instrument under consideration, appears to be a verbatim copy, except as to the fractional interest retained by the grantor and description of the property, of a form of conveyance set out in Vol. 7, Summers Oil and Gas, Perm. Ed., § 1462, page 407. Summers, by heading to that instrument, describes it as ''Mineral Deed—Prior to Lease, Reserving Perpetual Royalty Interest in Grantor without Participation in Cash Bonus and Delay Rentals''. As above stated, we do not try to define the instrument. ''The true distinction lies, not in the name given the particular instrument, but in the legal relations created thereby.'' Vol. 1, Summers Oil and Gas, Perm. Ed., § 132, page 314. In that section, discussing the differences between a deed and a lease, Summers further says: ''If a landowner by a particular operative act transfers his legal interest in perpetuity in all, or a portion of, the oil and gas, under his land to a grantee or conveys the land and reserves or excepts therefrom his legal interest in all or in portion of the oil and gas, such separate legal interest is clearly distinguishable from the legal interest created by a lease for

production. In the first instance, the one who has the separate interest has all of the legal relations that the original landowner had before the separation. He owes no duties to the owner of the land to drill, or to pay rent or royalties. He is privileged to drill and take the oil and gas, and he has rights that others shall not take them by operations on the land; but he is under no duties himself to take them; and has no liabilities of loss of his interest if he does not exercise his privileges of taking them.'' For further authorities bearing upon the nature of the instrument we are considering see Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S. W. (2d) 632, 137 A. L. R. 408; Kentucky Natural Gas Corporation v. Carter, 303 Ky. 559, 198 S. W. (2d) 311.

In support of the contention of appellant that the time within which the grantee herein had the right to develop the land for minerals appellant cites and relies upon Hall et al. v. Eastman Gardiner & Co., 89 Miss. 588, 43 So. 2, 119 Am. St. Rep. 709. That case does not control the case at bar. That was a timber deed conveying not only the timber then on the described land but all that might thereafter grow on such land. The deed stated no limit of time for grantee to cut and remove the timber. That deed contained this provision: ''It is especially covenanted and agreed that, as to each forty-acre tract herein described and conveyed, this deed shall continue and remain in force until the said Eastman Gardiner & Company, their successors and assigns, commence to cut lumber the same, and for one year thereafter, and then to become void and of no effect''. The Court construed that deed, considering all of its provisions, to impose upon the grantee the duty to cut and remove the timber within a reasonable time. But vital and fundamental distinctions exist between that case and the one at bar. There the deed purported to convey all timber which might grow on the land for all further time. The owner of the surface was at the mercy of the timber-owner. The timber-owner could simply wait and use the land for production

of timber. The existence of timber thereon rendered the land useless to the owner for all practical purposes. Even under these conditions the decision was by a divided court. In the case at bar grantee owned all except a one-eighth undivided interest in the minerals, and he had the right to utilize that one-eighth. The deed created no right interfering with the use of the surface by the grantee. The property interest of each party is separably taxable under the laws of this State. Both parties to this law suit concede the separate estates here involved may be legally created in this State. Armstrong v. Bell, 199 Miss. 29, 24 So. (2d) 10.

The case of Butterfield Lumber Co. v. Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A., N. S., 1123, 131 Am. St. Rep. 540, is more applicable to the case at bar. There the deed conveyed the timber then standing upon the described land, with express right of removal, but without time limit for that purpose. It was contended that the timber had to be removed within a reasonable time. This Court denied the contention. That case is much stronger in support of the principle for which appellant contends than is the case at bar, for the reason that in the Butterfield case the standing timber rendered the land useless for agricultural purposes. See on this question Lloyd's Estate v. Mullen Tractor & Equipment Co., 192 Miss. 62, 4 So. (2d) 282.

Affirmed.