WALKER, Justice,
dissenting:
I respectfully dissent from the holding of the majority that the chancellor was manifestly wrong in finding that the property was not susceptible to a fair division be *1039 cause of its unique factors and that a sale would better promote the interest of all the parties as allowed by Mississippi Code Annotated section 11-21-11 (1972). The chancellor’s opinion, which covers some eight pages, demonstrates that he was thoroughly acquainted with the law and he applied that law to the facts of this case in minute detail, stating:
This Court is of the opinion that the facts as presented in this case substantially distinguish it from the cases cited by the Defendants and that under the statute this property should be ordered sold and the proceeds of the sale divided by the owners of the property rather than ordering the property partitied (sic) in kind.
There is substantial evidence to support each and every finding made by the chancellor in his excellent opinion[1] and it is beyond comprehension how it could possibly be said that he is manifestly wrong in his findings. The chancellor was on the scene and knows the locality much better than the members of this Court. The chancellor also had the opportunity to observe the witnesses and hear their testimony and the determination of the weight and worth to be given their testimony was his, not this Court’s prerogative.
What the majority has done is to sift through the cold-typewritten pages of testimony, disregarding some testimony and giving greater weight to different portions of other testimony and evidence than did the chancellor. This is not the function of an appellate court. We do not sit as chancellors in a case such as this, but sit as a reviewing court and look only to the record to see whether there was substantial evidence to support the chancellor’s finding. In this writer’s view, there not only was substantial evidence to support those findings, but the chancellor properly interpreted the evidence in reaching his decision that the property was not susceptible to partition and that under section 11-21-11 a sale would better promote the interest of all the parties. I would, therefore, affirm the decree as entered by the chancellor.
SMITH, P. J., joins this dissent.
APPENDIX
OPINION
There has come on to be considered by this Court a motion filed by the Defendants seeking to vacate a Decree entered in this Court on August 30,1976, ordering sale for partition of certain land in Attala County, Mississippi, or in the alternative, seeking leave for an interlocutory appeal from said decree of this Court. By letter the Defendants have cited numerous cases which allegedly show that the Order of this Court aforesaid was improper and should be vacated. The Court having considered the cases cited by the Defendants and having given the Complainant an opportunity likewise submit authorities on this subject has considered this matter and is rendering this opinion in connection therewith.
The facts in this case are that a parcel of land containing approximately 82 acres is owned by the Complainants and Defendants as tenants in common with the Complainants together owning %ths interest and with the four Defendants together owning 4/9ths interest. The Complainants filed a Bill for Partition and alleged that the property could not be properly partited in kind and sought the sale of the property for the partition of the proceeds. This 82 acre parcel is a tract approximately one-quarter mile wide East and West and less than one-half mile long North and South. Testimony clearly indicated that 32 acres of this property were in the City, of Kosciusko, Mississippi, but that the other 50 acres were not in the City. Testimony did not reveal which 32 acres of the 82 were in the City. Testimony did, however, reveal that there was a City fire plug located at the Northeast corner of the property. Thus the Court must conclude that the 32 acres in the City is either located along the North end of the property or on the East side reaching to the Northeast corner of the property. A public road forms the East *1040 line for about one-quarter mile cutting the Northeast line of the property, so that all the property lies West or South of the road, but the only road frontage is along the Northeast corner. The property is also crossed by a large ditch with about 30 acres in the Southwest corner on the opposite side of the ditch from the rest of the property. Some of the property has good timber on it and there are other small parcels of good timber, but then part of the property consists of some very steep hills that are covered with large rocks and have practically no timber on them. There is one old field adjoining the road that is now growing up in brush. The testimony revealed that the best timber and the only fair sized area of timber, was along the North end of the property. Testimony also indicated that there were some residences and a trailer park nearby and that the property was a potential location for residential development in the future. Jim Peterson, a licensed forester, testified that it would be extremely difficult to fairly divide the property. W. E. Craft, a licensed realtor, testified that it would be almost impossible to divide the property. He also testified that in his opinion a division of the property would reduce the value of each tract over the value of the total at this time. W. Lynn Jordan, a licensed realtor from Holmes County, testified that he thought that the property could be divided and would propose to divide the road frontage and then run a line straight from the road to the West boundary in order to give the two groups appropriate quantities of land. One of the complainants testified that he did not think the property could be divided and that he thought it would jeopardize his interest to divide it. One of the Defendants testified that he did not want the property sold, but desired to retain the property, or his interest therein. He testified that he had not been on the property much and that his reason for not wanting it sold was that he would not be in a position to bid on it, though he had another party who apparently was in a position to bid on it.
Section 11-21-11 of the Mississippi Code of 1972, provides that:
“If, upon hearing, the court be of the opinion that a sale of the lands, or any part thereof, will better promote the interest of all parties than a partition in kind, or if the Court be satisfied that an equal division can not be made, it shall order a sale of the lands, or such part thereof as may be deemed proper, and a division of the proceeds among the co-tenants according to their respective interests. . . . ”
The eases cited by the Defendants clearly hold that the Court must find one of the elements called for by this statute before ordering a sale of the property in the first instance. That is the Court must either find that it will better promote the interest of the owners or that it can not be fairly divided. The Defendants in support of their motion have cited the cases of Dailey v. Houston, 246 Miss. 667, 151 So.2d 919; Shorter v. Lesser, 98 Miss. 706, 54 So. 155; Cox v. Kyle, 75 Miss. 667, 23 So. 518; Dantone v. Dantone, 205 Miss. 420, 38 So.2d 908; and Hogue v. Armstrong, 159 Miss. 875, 132 So. 446. This Court is of the opinion that all of these cases are clearly distinguishable from the case at bar for in each one of those the Supreme Court found that there was no evidence to support a sale. In these cases the Court did not hold that the evidence presented was insufficient to justify a sale, but simply held that there was no evidence. In the Dailey case the Court said there was no evidence introduced to support a sale. In the Shorter case the Commissioners had reported that they could not divide the property and the Court there said there was, “[no] substantial reason why it could not be [divided].” In the Cox case the Court said there was a want of any proof of the necessity or propriety of the sale. In the Dantone case the Court said also that there was no proof in the record as to why the property should be sold. In the Hogue case the Court said, “The petition did not allege, nor did the proof show the existence of any of the statutory requirements authorizing courts to sell in the first instance.” This Court is of the opinion that there was *1041 substantial evidence presented in this case as to why the property should be sold rather than divided and that therefore based on the above reasoning, this Court is of the opinion that none of the above cases are applicable to the case at bar.
Defendants also cited the case of Carter v. Ford, 241 Miss. 511, 130 So.2d 852, in support of their motion. In that case the Court held that the lower court had erred in ordering the sale of 216 acres of land. The land in question was either timber land or swamp land with some cultivation and was suitable for timber or pasture. It was also located 8 miles from the Town of Edwards. They also cited the case of Mathis v. Quick, Miss., 271 So.2d 924. In that case the land involved was 76 acres of rural land that was cut by two rivers and a highway with one house and 20 acres of cultivatable land with very little timber on it. There was testimony in that case that the property would be, “ — very difficult to divide — ” and there was further testimony that, “Just does not know how it could be divided.” They held that the Chancellor was wrong in ordering the sale. In doing so, however, they ordered that the widow in this matter be granted the house and sufficient land to equal the value of her interest in the property, and in doing so they seemed to evidence concern for her need to maintain her freehold in their expressly dealing with her need for the residence, though it was not found to be her homestead.
The Court also notes that the Supreme Court of this State has held that each case of this nature must turn on its own facts; Wight v. Ingram-Day Lumber Company, 195 Miss. 823,17 So.2d 196, and in two cases where the Court ordered sales of blocks of land of similar size and in which the Court said, it was hard to see how a trial Court could find that a sale would better promote the interest of the parties or that a parcel of 80-100 acres could not be divided in kind, but in these two cases the Court recognized that though it was hard to visualize examples where this could not be done that they recognized that there was a possibility that under some circumstances it would not be proper to require a division in kind of tracts of land of this size.
The Court having considered these cases and reviewed the evidence presented at the trial is of the opinion that the oral opinion rendered by this Court at the conclusion of the trial was correct and that the Decree of August 30, 1976, ordering the sale of the property should not be overruled. This Court is of the opinion that the facts as presented in this case substantially distinguish it from the cases cited by the Defendants and that under the statute this property should be ordered sold and the proceeds of the sale divided by the owners of the property rather than ordering the property partitied in kind. In reaching this decision the Court has considered the testimony of Mr. Peterson, the forester, who testified that he did not think the property could be fairly divided; the testimony of Mr. Craft wherein he stated that he did not think that the property could be properly divided. Mr. Craft also testified that he thought a division of the property would reduce the value because as the property now existed it was subject to potential development as residential property. Mr. Jordan, the real estate agent who testified, indicated that he was not very familiar with development patterns in this area. He did not seem to havé given too much thought as to potential development of the property. He proposed that the division would be made by dividing the road frontage and drawing a line in a Westerly direction. In view of the testimony of Mr. Peterson that most of the valuable timber is on the North end; in view of the fact that the Northeast corner would certainly be a part of the 32 acres in the City; and in view of the great differences in the value of the rolling timberland on the North end and the very poor quality rock hills on the South end, it would appear to this Court that if such a division were made and owelty were authorized, that the amount of owelty paid to the party receiving the Southern portion of the property, would be so great that it would be in effect forcing that party to sell a major interest in *1042 his asset while depriving him of the benefit of competitive bidding if the property is sold. The Court further considered other facts relative to the details of this particular piece of property, having taken the testimony of the witnesses as they described and having considered the two aerial photographs that were introduced to identify testimony of witnesses as to location and the general lay out of the land. Having considered this evidence the Court agrees with the testimony of Mr. Craft and Mr. Peterson that the property could not be properly divided. The Court is of the opinion that there would be too many factors that would have to be considered in valuing the property; first the great variations in timber value on the property; second the fact that 32 acres of property is in the City, and the balance is not, with the 32 acres either having to come off the North end or having to come out of the Northeast corner; third, the great variation in the value of the rolling land and the very steep rock hills; fourth, the fact that 30 acres of the land is separated from the rest by very deep ditch which would create a most substantial obstacle to any potential development of the property; five, the location of the road which adjoins only a small portion of the property on the Northeast corner, and in order to divide the property so as to give each an appropriate amount of road frontage, would be virtually impossible when you consider the other valuation factors. The Court is further of the opinion that it would better promote the interest of the owners to have the property sold. This is not 82 acres of rural land as was dealt with in the Mathis Case and the Carter Case, but this is 82- acres which is partially in the City of Kosciusko and which has in its value a potential for residential development. Two real estate agents who have looked at the property agreed that this was the best use for the property in determining its value. Normally a 40 to 50 acre block of property would be satisfactory for residential development, but in this instance we do not have simply a normal 40 to 50 acre block of land. We have a parcel with many other limitations; the location of the road; the limited amount that is in the City with City services available; the substantial variations in terrain types; the fact that in order to divide the property so as to avoid an enormous amount of owelty, the property would have to be cut up so that each would receive a portion of the 30 acres that is Southwest of the ditch, as well as part of the road frontage and part of the timber on the North. With the property cut up in that nature, it would be so chopped up that it would not be feasible for subdividing in view of the problems of crossing the ditch, the problems of the rock hills, and the narrow strips of land that would have to be allocated to the owners in order to fairly distribute the value. This Court having considered this evidence agrees with the testimony of Mr. Craft, that such a division would substantially reduce the value of the property to the owners as compared to the value if it were sold as an entire tract. In addition, this Court does not find that one of the owners has a great need to retain his land as in the Mathis Case where the Court wanted to be sure that the widow maintained her residence, for here none of the owners have any substantial need to retain the land; none of the owners have made any use of the land in recent years; none of the owners have any immediate demands for it. It is simply property in which four of them inherited an interest and which the other two owners purchased their interest from other heirs. The Court therefore reaffirms its earlier ruling that the property is not susceptible to a fair division because of the unique factors involved with this 82 acres and its earlier ruling that a sale would better promote the interest of all the parties and overrules the motion to vacate the Decree of this Court dated August 30,1976.
The Court has further considered the motion for permission to file an interlocutory appeal. In view of the prospects of an appeal of this matter, it would appear to the Court that potential bidders at the sale called for by the Order of August 30, would be very hesitant to bid knowing that their acquisition would be subject to delay brought about by the appeal process. The *1043 Court therefore finds that it would be to the best interest of all parties to authorize this interlocutory appeal to finally resolve the matter of whether the property should be sold, before conducting the sale and the motion of the Defendants for permission to file an interlocutory appeal is hereby sustained.
This opinion rendered this the 22nd day of September, 1976.

. See appendix.